# Zerbe *versus* Miller.

1. A conveyance of real estate by a father to his son, intended to delay and hinder creditors, is fraudulent as to creditors, whether the consideration amount to the value of the land sold or not.

2. If the conveyance to the son be fraudulent as to creditors, the son cannot set up an outstanding title to the land in another, against the purchaser at sheriff's sale, of the title of the father, who was in possession at the time of the sheriff's sale.

3. Evidence of the value of the land in dispute, without specification as to time, or of its value at the time of the trial, the conveyance in question having been made years before, is not admissible.

4. When a conveyance is impeached on the ground of fraud, considerable latitude is allowable in the admission of evidence ; the question is whether the evidence can throw light on the transaction, or whether it is irrelevant.

5. It is incumbent on a party who attempts to deprive the adverse party of a claim apparently due him, and evidenced by a proper voucher, to support his allegation by proof, however slight it may be; if none such be given, the court are not to reject the evidence of the claim, or to submit the question of its invalidity to the jury.

6. A son working after he is of age for his father does not thereby acquire a right of action against his father, unless there has been a previous contract or agreement to pay on the part of the father.

7. An assignment that the court erred in their charge to the jury generally, (without any specification,) is not a proper assignment.

ERROR to the Common Pleas of *Berks county.*

This was an action of ejectment by Samuel, John, and Henry Miller against Henry Zerbe and John Zerbe, for a tract of

[Zerbe v. Miller.]

land, situate in Tulpehocken township, Berks county. It was sold as the property of John Zerbe, on a judgment in favor of John Miller vs. John Zerbe. Miller had suit brought upon a bond of John Zerbe, in which an award was had December 7th, 1844, for $3364.96; and an appeal being entered by defendant, judgment was entered for $3553.78, on March 19th, 1846. *Venditioni exponas* issued, and was returned sold to Samuel Miller, John Miller, and Henry Miller, for $60. Deed executed by sheriff.

On the trial of the ejectment, on the part of the plaintiffs was given in evidence the record of the proceedings on the bond above referred to, and evidence of the value of the land.

On the part of the defendants was offered, 1. Deed from David Moyer to John and Jacob Zerbe for the land in question, dated April 3d, 1816, for eighty-two acres and one hundred and ten perches, exact measure.

2. Will of Jacob Zerbe, dated March 31, 1832, and proved May 21, 1833, with letters testamentary to Catharine Zerbe, John Zerbe, and David Brumbach, with power to sell for the payment of debts.

3. Deed, dated April 27, 1844, from John Zerbe to Augustus Zerbe, with names of the executors, John Zerbe and David Brumbach, in the premises of the deed, but signed only by John Zerbe, for a moiety of the same land, and for a consideration of $413.20, and subject to the purchase-money due the commonwealth, and cost of patenting.

4. November 29, 1844, deed of assignment endorsed, from Augustus Zerbe and wife to John Zerbe, for the same consideration as above.

5. Deed, dated November 30, 1844, for the whole of the said land, and for a consideration expressed of $1157.62½.

It was admitted that the said Catharine Zerbe and David Brumbach are still living.

Notice was given by Henry Zerbe, at the sheriff's sale, that the land was his, and not John Zerbe's.

Daniel Whiskyman, testified:—I knew this land very well thirteen years ago, and see it almost every year. It has a two-story frame house and Sweitzer barn. I have not been on the land lately. It may have been worth thirty or forty dollars per acre in 1844–5. It has a good barn and house.

Cross-examined:—I passed the land this summer, but was not on it. It is twelve years since I was on the land; it has a gravel bottom; is hilly and broken. I am not a farmer, but a miller, and work now at Jonathan Miller's. I do not own any land, but *once owned a piece of eighty acres*, in Tulpehocken, *about one mile from this land*. I sold that land; I expect it was not as good as Henry's; there was an old house and old barn on it. May be the meadows on my place were better than on Zerbe's;

[Zerbe *v.* Miller.]

some part of the land was as good as Zerbe's. I think, take it altogether, it was not better than Zerbe's; Zerbe's was better than mine; the difference was not much; one was like the other.

The witness was then asked the value of this land; to which question, so proposed, the said plaintiffs objected, because not directed to any time, and the court sustained the objection; to which decision of the court the said defendants then and there excepted. This was the first bill of exceptions.

Michael Kalbach, sworn:—I am a subscribing witness to this bond and deed, and saw them executed in Esquire Vanderslice's office, in Womelsdorff; none of the young Zerbes were there that I saw; I think I witnessed other deeds at the same time, but will not be positive; it was all done the same day; I don't know who took the papers away; there was no money paid that I saw.

Cross-examined:—I did not see the papers delivered; am not positive there were, any persons there that day but these two.

The plaintiff then offered in evidence the same bond from John Zerbe to Andrew and Henry Zerbe, dated November 30, 1844, for $2400, conditioned for the payment of $1200 on December 1, 1844, together with record of judgment, execution, and proceedings on said bond. To this offer defendants objected, but the court overruled the objection; and exception on part of defendant. This was the second bill.

John Pottinger, sworn, and cross-examined:—My judgment against John Zerbe was $29.23; this Henry paid me at the adjourned court, March 1846. Defendants then proposed to ask the witness if Henry did not work for his father over age, and how long; which question was objected to and overruled, and bill of exceptions sealed. This was the third bill.

Other evidence being given, there was also given in evidence a deed dated November 30, 1844, from John Zerbe and wife to Peter Laucks, for the mill tract and six acres, for the consideration of $1000, subject to Miller's mortgage debt; acknowledged same day before Vanderslice, and recorded December 2, 1844. Mortgage bond before referred to, and another bond from Mr. Zerbe to John Miller, £1078, given in evidence.

The charge of GORDON, President J., was as follows:—

In the year 1844, John Zerbe, one of the defendants in this suit, was the owner of a mill and six acres of land in Berks county, and also of the tract of land in dispute here. He was largely indebted to different individuals, and among them to John Miller, the father of the plaintiffs, in an amount which, when ascertained by judgment, exceeded nine thousand three hundred dollars. *For the portion of his debt,* John Miller held the bond of John Zerbe for £1222, *secured by mortgage* on the mill and six acres, and for the residue a bond of £1078. On the 30th day of November 1844, John Zerbe conveyed *the tract in dispute* (stated in one of the deeds

[Zerbe v. Miller.]

given in evidence here to be eighty-two acres one hundred and ten perches) to his son Henry Zerbe, the other defendant, for the sum of eleven hundred and fifty-seven dollars and sixty-two and a half cents, subject to the payment of the balance of the purchase-money due to the commonwealth. There is no evidence in the cause showing how much of the purchase-money, if any, remained due to the commonwealth. On the same day, John Zerbe executed to his sons, Andrew Zerbe and Henry Zerbe, a judgment bond for $1200, on which judgment was entered in this county; and on an execution issued upon it, the personal property of John Zerbe was levied upon and sold by the sheriff.

On the same 30th day of November 1844, John Zerbe conveyed the mill and six acres of land to Peter Laucks, for the consideration of one thousand dollars, subject to the payment of the mortgage debt due to John Miller. On the sixth of December 1844, John Miller instituted actions on his bonds against John Zerbe, in this court, and obtained judgments thereon. Executions were issued on these judgments, returnable to August term 1846, on one of which the mill property was sold to the plaintiffs in this action, for $4600, about twelve hundred dollars less than the amount of the execution; and on the other, *the property in dispute* was sold likewise to the plaintiffs for sixty dollars.

The plaintiffs having obtained the sheriff's deed, have brought this action of ejectment to recover possession of the land.

The defendants contend that the plaintiffs have no right to recover, because they say that the title and interest of John Zerbe had passed from him to his son, Henry Zerbe, before the judgment of John Miller, on which the land was sold, was obtained, and that the property was at the time of entering the judgment the property of Henry Zerbe, and not liable to be sold on any judgment against John.

As to one undivided moiety of the land, they defend on another ground, alleging that although claimed by John Zerbe and sold by him to his son, Henry Zerbe, yet it never was his in fact, having been at one time the property of his brother, Jacob Zerbe, after whose death it was so informally and insufficiently conveyed by his executors that no title passed by the conveyance, but that the same remained in the heirs or legal representatives of Jacob Zerbe, and remains so still.

The court will dispose of the latter objection first, in order to leave untrammelled for your consideration the question of fraud, which is the principal question to be determined in this action. The defendants have given in evidence a conveyance of the land to John and Jacob Zerbe, dated in 1816, and the will of Jacob Zerbe, proved May 21st, 1833, giving power to the executors to sell his land in Schuylkill county, and also the land of which he owned the half, for the payment of his debts. The executors

were Catharine Zerbe, John Zerbe, and David Brumbach, to all of whom letters testamentary were issued.

They have produced a deed purporting to be the deed of John Zerbe and David Brumbach, executors to Augustus Zerbe, for one moiety of the land for the consideration of $413.24; but it is executed *by John Zerbe alone.* Endorsed upon this deed is an assignment by Augustus Zerbe to John Zerbe, of the same interest for the same consideration. Defendants have also shown the deed for the land from John Zerbe to his son Henry, already adverted to. They contend that when a power is committed to several persons to perform an act of a private nature, all those persons must unite in its exercise; and the law is undoubtedly so. But in this case we find John Zerbe on this land, which had been thus sold in 1834–'5, after the time of conveyance to Augustus Zerbe, and from Augustus to him, and from that time forward in possession of it by himself and his family, and in 1844 asserting ownership and exercising the right to convey it as his own. We have in evidence the administration account of John Zerbe and David Brumbach, showing that the purchase-money of this land had been received and accounted for by them. We have the distribution of the balance of the account, consisting of the purchase-money of this land, by auditors appointed by the Orphans' Court, among the creditors of Jacob Zerbe, who were *cestui que trusts* of the fund, and could by the receipt of it confirm the title to the land defectively conveyed; and we have direct proof of the payment of a portion of it to one of those creditors, and the declaration of John Zerbe, while the owner of the land, that he had paid nearly the whole of them. There is no evidence here that the heirs or creditors of Jacob Zerbe have ever made any claim to this land, and we are of opinion, that in the facts before us, there is evidence enough of title to the whole tract in John Zerbe, to entitle the plaintiffs to recover the whole of his property, if there be no other difficulty in their way.

The plaintiffs allege that the conveyance of John Zerbe to his son Henry Zerbe, dated 30th November 1844, was made to delay, hinder, and defraud the creditors of the grantor, of whom John Miller was one, and that the conveyance as against him was utterly void; and that as purchasers at a sale made by the sheriff on the judgment of John Miller against John Zerbe, they have a right to recover the property from John Zerbe and his fraudulent grantee. By the laws of Pennsylvania, every conveyance made to or for the intent or purpose of delaying, hindering, or defrauding creditors, is deemed as against those creditors to be utterly void. A man cannot lawfully give away his property, or any considerable portion of it, without retaining sufficient, without all doubt or question, to satisfy his just debts. If a person who is indebted sell and convey his property for a grossly inadequate consideration, without retain-

[Zerbe v. Miller.]

ing sufficient to pay his debts, this would be a badge of fraud from which a fraudulent intent might be inferred, and the conveyance declared to be null and void as against his creditors. And even if the consideration be adequate, yet if the intent were to delay, hinder, and defraud creditors, and prevent them from taking the land for the payment of their debts, and this intent were known to the grantee, such conveyance would be null and void as against the creditors. Where the question turns on fraudulent intent deducible from want of or inadequacy of consideration, the important point is, the consideration at the time of the conveyance, which, if fraudulent when made, cannot be aided by subsequent payments not contracted for in the arrangement between the grantor and grantee. When the conveyance is in fraud of creditors, it is void as to the creditors, and they may take the property in execution and sell it as the property of the grantor, which is the usual course adopted for the purpose of trying the question of fraud—a course which has been resorted to in the case before us. The plaintiffs allege that the fraudulent intent of this conveyance is obvious from the circumstances of the case. They say that it is proved by the evidence, that the grantee, Henry Zerbe, was a man of no property; that the sale was suspicious on account of the relation of father and son between the parties; that the suspicion of fraud is increased by the confession of judgment to the grantor's sons, at or about the same time; that the consideration for the conveyance was grossly inadequate; that by the sale to Peter Laucks, at the same time, John Zerbe retained nothing in his hands by which his creditors could be paid; that the appeals from the awards obtained by John Miller against John Zerbe were intended for delay merely, in order to retain the property and derive from it the means of discharging some debts, and thereby give color to the pretence that the consideration of the conveyance was an engagement by the grantee to pay the grantor's debts; that in point of fact, John Zerbe was not at all indebted to his son, Henry Zerbe, at the time of the conveyance to him; that such of the debts of John Zerbe as were paid, were not in fact paid by Henry Zerbe, but by John Zerbe, or with money furnished by him; that the evidence does not prove any undertaking by Henry to pay the debts of John Zerbe, the grantor; that the declarations of John and Henry Zerbe show a fraudulent design on the part of John to divest himself of his property, so as to protect it from the executions of his creditors, and leave nothing in his hands by means of which the creditors could obtain satisfaction of their claims. You are the judges of the credit to be given to the witnesses whose testimony you have heard. It is for you to say what the testimony proves, and to reconcile it, if you can, where part of it contradicts or is in conflict with other parts.

The defendants' counsel contends that the mere fact of indebted-

2 R

ness on the part of a grantor at the date of conveyance, is no badge of evidence of fraud; and in this the court are of opinion that they are correct in stating the law. They further say that a voluntary conveyance, though made to the son of the grantor when such grantor is in debt, is not of itself fraudulent, provided sufficient property be retained by the grantor, beyond all doubt or question, to pay his debts and satisfy all just claims against him. The law is so. They contend that the sale of this land, by John Zerbe to his son Henry, was a fair and valid transaction, being made for a valuable and adequate consideration, and that John Zerbe, when he conveyed this land to Henry, retained property in his hands abundantly sufficient to pay all his debts. This is for your decision. You have heard the evidence as to the value of the property and the price agreed to be paid for it by Henry, and the manner in which he was to pay it, and also the evidence as to the value of the mill and six acres which were retained by John Zerbe. It appears that the mill and six acres were conveyed to Peter Laucks, by deed dated the same day with the deed to Henry, for the land in dispute, for the sum of one thousand dollars, subject to the payment of the mortgage debt due to John Miller. The mortgage debt was not the whole claim of John Miller against John Zerbe. He had beside a bond for £1078. It has been said here in argument, that this bond was for interest due on John Miller's mortgage, and might be regarded as included in the mortgage debt, subject to which the sale was made to Laucks. There is no evidence in this cause that the bond in question was for the interest due on the mortgage, which renders it unnecessary to decide whether it was included in the lien of the mortgage or not. It is for you to say, from all the evidence in the cause, whether the sale and conveyance to Henry Zerbe, by his father, John Zerbe, on the 30th day of November 1844, was made with the intent and purpose to delay, hinder, or defraud the creditors of John Zerbe or not. If you shall be of opinion that it was so made, your verdict should be rendered in favor of the plaintiffs; if otherwise, then for the defendants. The plaintiffs having given notice that they intend to claim damages for the mesne profits, you will, in case you find in their favor, find also the amount of damages for mesne profits, since their title to the land accrued by the delivery of the sheriff's deed to them.

To this charge the defendants, by their counsel, excepted.

A verdict was rendered for the plaintiffs, and damages assessed.

It was assigned for error, *inter alia*, that the court below erred in the following particulars :—1. In rejecting the evidence offered as in the first bill of exceptions. 2. In admitting the evidence contained in the second bill of exceptions. 3. In rejecting the evidence offered, as in the third bill of exceptions. 8. In charging that if the consideration of the sale was adequate, yet if the intent

[Zerbe v. Miller.]

was to hinder and delay creditors, and this intent was known to the grantee, the deed would be void as to creditors.  9.  In *stating* the argument in favor of the plaintiffs below, the court states arguments and suggestions in support of which there was no evidence. 10.  In charging that there was no evidence that the mortgage debt to John Miller included the whole debt to John Miller.

The case was argued by *Hoffman* and *N. Strong*, for plaintiffs in error.

*Smith*, for defendants.

The opinion of the court, filed July 3, was delivered by

COULTER, J.—There is nothing in the first bill of exceptions. The witness said he had not been on the land for twelve years, although he had once passed by it during that time.

The question as to the value of the land might have been pertinent to the matter in issue, if directed to the point of time when the matters in issue occurred; but as it was not so directed, but was indefinite as to time, a direct answer might have misled the jury instead of giving them exact information proper for their guidance.  The value of the land might have been ambulatory, owing to surrounding circumstances, and what it was worth at the time of the trial might not have been a correct criterion of its value at the time of the transaction to be elucidated.  The question was therefore properly overruled.

The bond of John Zerbe to Andrew and Henry Zerbe was properly admitted in evidence.

Fraud assumes so many shapes, disguises, and subterfuges, that courts always afford a latitude of evidence, by admitting any thing at all connected with the transaction in which it is alleged to exist, in order that it may be detected and exposed, for the safety of society and the benefit of morals.  This latitude can never injure an honest man.  Covin and deceit avoid the light; but fair dealing invites investigation.  The only true test is whether the evidence can throw light on the transaction, or whether it is altogether irrelevant.

This evidence was relevant.  It tended to show that the father, by means of deeds and judgments executed about the same time, was stripping himself, not only of his real, but also of his personal property, without consideration paid, in favor of his sons.  Men do not act without motive.  And when the father gave this bond to his son, and he entered it on the record, took out execution, and sold all his father's personal property, the natural inquiry is, for what was it done?  Sons selling out their father!  The old man had made a deed to one of them, to wit, Henry, on the same day, for the land in dispute.  What was the object of this transfer of his land, and confession of this judgment, by means of which his per-

sonal property was swept from him? On the same day he had conveyed the mill property to Laucks, subject to the mortgage to Miller. These things being out of the usual course of dealing, and wearing a sinister aspect, afforded a platform on which the judgment could rest; and conduced to establish, with other facts in the cause, that the design was to defraud Miller, and cover up the estate safe from his debt. The evidence was properly admitted.

It has been often ruled by this court, that a son who works for his father after he is 21 years of age, does not thereby establish a debt against his father, unless there has been a previous contract or assumpsit to pay on the part of the father. The evidence rejected, therefore, did not conduce to prove any matter material to the defendant's case. There was no error, therefore, in overruling it.

The fourth error assigned, to wit, that the court erred in their charge to the jury generally, is no assignment of error at all. If the party cannot put his finger upon some error and specify it, we take it for granted that he cannot find any.

The fifth, sixth, and seventh assignments of error relate to the title of Jacob Zerbe. But the court committed no error on that subject. John Zerbe went on this land under a title which, if it can be disturbed at all, must be done by the heirs of *Jacob* Zerbe. But they object not to it. John Zerbe has been long in possession, claimed the land as his own, publicly, notoriously exercised every act of ownership, and had paid at least a considerable portion, if not all, the purchase-money. If then the deed under which he claimed was defective, about which it is not necessary to say any thing, still that circumstance could avail the defendants nothing, because John Zerbe had a title and possession which could be bound by judgment and sold. It was bound, and was sold by due process of law, and the plaintiffs purchased; and they hold the right of John Zerbe, in defiance of all that the alienee of John Zerbe or he himself can do, if the deed was fraudulent against creditors. It lies not in the mouths of the defendants to say that the title of John Zerbe was defective, for the purpose of defeating creditors, and thus preserving the land for themselves. That would be making the law itself to be subservient to their covinous design. But the law is the common parent of all, which all are bound to reverence and respect, and which deals out justice with an even hand. It never helps one man to cheat another. It is to be observed that the defendants below are John Zerbe himself, who was still in possession, and his son Henry, his alienee. If the deed from John Zerbe to his *son* Henry was fraudulent as against the creditors, they are not in that category which would enable them to set up an outstanding title against the purchaser of John Zerbe's interest in the land. Henry Zerbe claims under John Zerbe, whose title was sold, and John Zerbe himself was in possession at the

[Zerbe v. Miller.]

time of the sale by the sheriff, had claimed title, and sold that title
to his son Henry.  The real question here is whether that sale to
Henry was in fraud of his creditors.  If it was, they must yield up
possession to the purchaser at sheriff's sale.  It is, perhaps, not
proper here to pronounce upon the title of the creditors or heirs
of Jacob Zerbe, who are not parties.  But it seems unavoidable to
say that from all the facts that appear in this case, their claim
upon the land, if they should ever make one, would be hazardous
and doubtful in the extreme.  The court below put this part of the
case upon correct ground.  No principle can be better established
than that which forbids courts to submit a fact to a jury without
some spark of evidence to sustain it.  It will not do to allow them
to guess at an alleged fact without any evidence whatever.  That
would not do in a court of justice; no man would then be safe in
his cause.  The bond for £1078 on its face contains no evidence
whatever that it was for interest due on the mortgage.  I have
looked over the testimony in the cause in vain for any gleam of
evidence that it was given on that account.  It is the duty of a
party who alleges a fact that would deprive his adversary of a sum
apparently due to him, and evidenced by proper vouchers, to give
some testimony of that fact, be it ever so slight, before submitting
it to the jury.  We therefore perceive no error in the manner in
which that subject was handled by the court below.

The consideration of a sale may amount to the value of the
land sold, and yet the sale be fraudulent as against creditors, be-
cause such sale may delay, hinder, and obstruct them in the col-
lection of their debts.  And a sale for value may not only delay
and hinder them, but may also be made for that very purpose and
intent.  Thus a man may sell and receive bonds at long payments,
and thus delay and hinder creditors.  It is the intent that gives
character to the transaction; and when the act corresponds with
the intent, and both concur in delaying and hindering creditors,
the deed is void.  Where the purchaser had no knowledge of the
intent, and was not a guilty party to the transaction, nor impli-
cated in it by the peculiar circumstances, then if he, *bona fide*,
actually paid full value, he would be protected.  But he must prove
*actual payment*.  The receipt on the deed and giving bonds are
not evidence of *actual payment*: Roger v. Hall, 4 *Watts* 359;
Geiger v. Welsh, 1 *Rawle* 349.  It was not error therefore in the
court below to say, in the course of their charge, " and even if
the consideration was adequate, yet if the intent were to delay,
hinder, and defraud creditors, and prevent them from taking the
land in payment of their debts, and this intent were known to the
grantee, such conveyance would be void as against the creditors.".
And the reason that there is no error is because in such case the
purchaser would be a participant in the fraud, and could not be in
the light of an *innocent* purchaser, which affords the real ground

of protection in all cases where creditors are attempted to be defrauded. But where the purchaser is conusant of the fraud, he is helping a debtor to cheat his creditors ; and after the deed done they might among them dispose of the money and bonds as they pleased. If that would defeat the statute of Elizabeth, it would in effect and in practice make it of no value : Ashmead *v.* Hean & Moulfair, 1 *Harris* 584 ; 8 *Johnston* 451 ; 7 *Barr* 264 ; Kepner *v.* Buckhart, 5 *Barr* 478.

The great question in the case is whether the deed to Henry Zerbe, by his father John Zerbe, was made with intent to defraud his creditors. The case is one of a class. Many of a like kind have been adjudicated in this court, and this one is perhaps as rank in all its facts and circumstances and elements of error as any of them. Johnston *v.* Harvey, 2 *Pa. Rep.* 92 ; Geiger *v.* Welsh, 1 *Rawle* 349, which is a very strong case, and in which it was ruled that a deed made by a father to his sons in consideration of their supporting him during his life, although the consideration was sufficient between themselves, that nevertheless the deed was void as against creditors. In Johnston *v.* Harvey the consideration was to pay off certain judgments on record, and to support the grantor and wife during life ; yet the deed was held void because there were debts due by him not on record. And in that case a purchaser from the sons was held to have no better title than the sons themselves, because the terms of the deed to the sons gave sufficient forewarning to the purchasers that there were creditors unprovided for in the sale.

In this case the court did not pronounce the deed to be a *legal* fraud as regarded creditors, but left it to the jury as a question of *actual* fraud ; and this was as favorable as the defendants below could ask. The court instructed the jury as follows :—" It is for you to say, from all the evidence in the cause, whether the sale and conveyance from John Zerbe to his son Henry Zerbe, on the 30th November 1844, was made with intent and purpose to delay, hinder, or defraud the creditors of John Zerbe or not. If you shall be of opinion that it was so made, your verdict should be in favor of the plaintiffs ; if otherwise, then for the defendants." The verdict was for the plaintiffs, and the jury found the fraud. It is unnecessary for me to recapitulate the facts or dwell upon them, for, as a question of *actual* fraud, it belonged to the jury, and they have put their seal upon it. . I may say that we are bound to administer established principles so as to promote honesty and fair dealing, and not encourage covinous contrivances, intended to defeat honest creditors. Such cases never come into court without the dark frown of justice upon them.                    Judgment affirmed.