TED G. EVERTS, Claimant, Appellee, v. AMELIA JORGENSEN, dba KIEL HOTEL et al., Defendants, Appellants.

No. 45018.

Miller, Huebner & Miller, for appellants.

J. A. Williams, for appellee.

HAMILTON, J.—The claimant, Ted G. Everts, and Wayne Goetz were employed by Amelia Jorgensen, who was operating the Kiel Hotel in Council Bluffs, Iowa. Everts commenced work in August, 1934. Sometime thereafter, Goetz was also employed. They each served in the capacity of clerk. Everts had the shift from twelve, noon, to twelve, midnight, and Goetz from twelve, midnight, to twelve, noon. There was a beer parlor adjacent to the hotel lobby in the same building. Mrs. Jorgensen took over the operation of this beer parlor, July 1, 1936, and put Goetz in charge as clerk or bartender. He held 'this position until one o'clock, a. m., September 24, 1936, when he was discharged by Mrs. Jorgensen. At about the same time, she discharged a girl by the name of Faye. The reason given was because "he [Goetz] was too familiar with the help and everyone in there." Mrs. Jorgensen testified:

"I talked to Wayne for about four days. He would not listen to reason so I thought it was time for him to go. * * * I did not discuss Goetz's discharge with Everts and he never discussed it with me. Everts was not around when I fired Wayne Goetz nor when I fired the girl, Faye."

About noon of the same day he was discharged, Goetz was in the beer parlor. A liquor salesman came through the hotel and went into the beer parlor. Everts, whose job it was to check up on the liquor supply, thinking that the salesman might attempt to sell wine to Goetz, who had at different times bought liquor, followed the salesman into the parlor. There are two steps from the hotel lobby into the beer parlor and Everts stopped on these steps or on the landing. He noticed the wine salesman was in the act of leaving the beer parlor. Goetz and

Bess Reed, who was hostess in the beer parlor, wanted to dance. She asked Everts for a nickel to put in the Victrola and Everts did not have a nickel, whereupon Goetz furnished the nickel and they danced to the music for three or four minutes, during which time Everts stood watching them. When they finished the dance, the Reed girl started up towards the bar and Goetz started towards the lobby. As he passed Everts, Bess Reed testified that Goetz:

"Just grabbed Everts over the back of the neck and threw him off the steps and down from the steps. I saw that his feet or body flew through the air as he went down on the floor. * * * he threw him ten or fifteen feet. I saw him strike on his head and shoulders on the tile floor. Then Everts tried to get up and when he tried to get up Goetz hit him or kicked him back down. Then I interfered."

While they were dancing, there wasn't much said. Goetz made some remark about the fast music and Bess Reed said she was talking and laughing; that Goetz *did not appear* to be intoxicated or drunk. Neither Everts nor Bess Reed knew that Goetz had been fired or discharged. He did not say anything about being fired or about the girl being discharged. Bess Reed testified, in substance, that Goetz was very quick-tempered, but there was not anything happened to arouse his temper; that Everts was just standing there and Goetz walked toward Everts and grabbed him around the neck; that she heard no cussing; and that they were not merely "scuffling", but "he was really going after Everts, kicking him and all of that." She said she did not know of any reason why the assault was made.

Everts' testimony was to the same effect. Everts had worked at the hotel longer than Goetz and, because of this, he was given superior authority to Goetz and had a right to tell Goetz what to do and what not to do, when Mrs. Jorgensen was not there. He said he had absolutely nothing to do with the discharge of Goetz; that he had not advised Mrs. Jorgensen to fire him; that he had nothing to do with the discharge of the lady; that he never had any trouble with Goetz; and that, during all the time they worked there together, they never had an argument. Everts further testified that:

"While Goetz was beating me, I would not say that he

called me any foul names or anything. I never heard him express himself as being sorry for anything he did. There was nothing happened there that I observed that in my opinion would cause a quick-tempered man to fly into a rage. While he was assaulting me, to my knowledge, he did not say anything.''

Goetz left the place and disappeared and had not been located at the time of the trial.

The entire case turns on the construction to be given to subparagraph (b)· of paragraph (5) of section 1421 of the 1935 Code, which provides:

''The words 'injury' or 'personal injury' shall be construed as follows:

'' (a)    *  *  *

'' (b)    They shall not include injury caused by the wilful act of a third person directed against an employee for reasons personal to such employee, or because of his employment.''

As we understand appellants' contention, the decision of this case turns on the narrow point of on whom rested the burden of proof of the exception contained in the statute above-quoted. The argument is that there is no evidence whatever in the record that the assault was not directed against the claimant for reasons personal to him or because of his employment and, in the absence of such evidence, the burden resting on the claimant, to prove the negative or exception, claimant must fail.

We take it to be the general rule that the workman or employee is entitled to compensation for injuries received which arose out of and in the course of his employment. His necessary burden or affirmative showing must, then, be to prove himself to be a workman or employee, within the meaning of the statute, and that he received an injury and that such injury arose out of and in the course of his employment.

Appellants do not seriously contend· that there can be any doubt under the interpretation placed upon the Act by this court that the injury received ''arose out of'' and ''in the course of'' the employment. These terms have been many times considered by this court in our prior decisions and it would serve no useful purpose to again review them and we decline to do so. References may be had to Enfield v. Certain-teed Prod. Co., 211 Iowa 1004, 233 N. W. 141; Walker v. Speeder Mach.

Corp., 213 Iowa 1134, 240 N. W. 725, and cases therein cited for a full discussion of the matter.

There are certain specific exceptions of injuries which are not compensable. These exceptions are found in the statute. One of them is contained in subparagraph b of paragraph 5 of section 1421, heretofore quoted. Two others are found in section 1376 of the 1935 Code, which reads:

"No compensation under this chapter shall be allowed for an injury caused:

"1. By the employee's wilful intent to injure himself or to wilfully injure another.

"2. When intoxication of the employee was the proximate cause of the injury."

The rule propounded by appellants would require every claimant, in order to recover, to negative these exceptions by affirmative proof that his injury does not fall within one or more of the exceptions. We think this contention is contrary to the generally accepted rule that he who relies upon an exception to a general rule has the burden of establishing the facts which bring the matter within the exception. 20 Am. Jr., par. 142, p. 148, states the rule as follows:

"The burden rests upon the party who, as a basis of his claim or defense, asserts that he is within an exception. * * *." (Citing a long list of cases.)

We do not find that this court has ever had occasion to consider or make application of the rule in connection with the exception contained in the above statute. We have applied the rule many times in cases based on insurance policies containing similar exceptions. In Jones v. Accident Assn., 92 Iowa 652, 653, 61 N. W. 485, the policy contained the following:

"The insurance under this contract *shall not* extend to or cover * * * accidental injuries or death resulting from or caused, directly or indirectly, wholly or in part, by * * * fighting; * * * " (Italics ours.)

It was held that these exceptions were matters of defense, available to the defendant; but, not constituting a part of the plaintiff's case, the burden did not rest upon him to either plead

or prove the absence of them, in the first instance. In Follis v. Accident Assn., 94 Iowa 435, 436, 62 N. W. 807, 808, 28 L. R. A. 78, 58 Am. St. Rep. 408, the policy contained similar exceptions, one of them was "exposure to unnecessary danger". It was held that the burden was on the defendant to show that the deceased received his injuries while or because of his voluntary exposure to unnecessary danger. In Allen v. Travelers Assn., 163 Iowa 217, 221, 224, 143 N. W. 574, 575, the policy contained the following exception:

"This association *shall not* be liable * * * [for] intentional injuries causing death or disability inflicted by the member or any other person upon him." (Italics ours.)

This proviso was pleaded by the defendant as an affirmative defense and we said:

"But the defendant in this case pleaded this provision of the 'rules' as a separate and affirmative defense. If this provision was properly pleaded as an affirmative defense, necessarily the burden of proving it rested upon the pleader.

"There is the further consideration that the proviso pleaded was in the nature of an exception to the general provisions of the constitution which purported on their face to cover *all* accident insurance. · It devolved upon the defendant to plead and to prove that the accidental injury, from which the insured died, came within such exception. If it devolved upon the plaintiff in the first instance to traverse such exception and to prove the negative, it would likewise devolve upon her to do the same as to the entire enumeration contained in the 'rules' above quoted. We think, therefore, that the proviso under consideration should be deemed as in the nature of an exception and that the general rule of pleading and proof in such cases should obtain."

In the case, Keyes et al. v. New York, O. & W. Ry. Co., 265 Pa. 105, 108 A. 416, a workmen's compensation case, the act contained the following provision:

"The term 'injury by an accident in the course of his employment,' as used in this article, *shall not* include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed

against him as an employee or because of his employment; * * *.'' (Italics ours.)

The answer set up the foregoing provision as a defense. In that case, as in the instant one, there was little or no direct evidence in the record to throw light upon the reason for the assault. The court said:

''The case turns on the burden of proof as to that fact; the lower court held it was upon the claimants, while the compensation board held it was upon the defendant. We agree with the latter. The general rule is one of liability for violent injury suffered by an employee in the course of his employment, as this undoubtedly was; the exception is that the employer is not liable for 'an injury caused by an act of a third person intended to injure the employee because of reasons personal to him'. The burden of proving the exception rests upon the party interposing it as a defense, for as to that issue he holds the affirmative. See Zerbe v. Miller, 16 Pa. 488; 16 Cyc. 928. The burden of proof of a particular allegation rests upon the side to whose case it is necessary, and that is the defendant here. * * * A claimant's case is prima facie made out by proof of affirmative facts showing the employer's liability, and that rule is not changed by the fact that earlier in the section the burden of proving suicide is expressly placed upon the employer. When, as here, there is nothing to throw light upon the occurrence, it would impose an unreasonable burden upon claimants, and defeat the beneficent purpose of the act, to require them to establish the negative proposition that the injury was not inflicted by a third person because of some reason personal to the employee.''

In the instant case, appellants apparently recognized the defense, which they now rely upon, as being an exception to the general rule and, hence, necessary that they make an affirmative averment in relation thereto. The answer, in addition to general and specific denials, alleges:

''The defendants further aver that whatever injuries the claimant sustained on or about September 24, 1936, the same were caused by the wilful act of a third person directed against

the claimant for reasons personal to the claimant or because of his employment.''

This affirmative averment, while not a confession and avoidance, strictly speaking, is in the nature of a confession and avoidance and it would seem only logical that, in order to prevail in this defense, the burden should rest upon those who affirmed it, as a fact, to be true.

If we adopt appellants' theory that there is an entire lack of evidence tending to prove or disprove the exception, then, under the foregoing rule, they have failed to sustain the burden and for this reason the decision must be against them. However, as we view the matter, the decision need not rest solely upon the question of burden of proof. We think the order of the commissioner may be sustained on the ground that there is in the record evidence to support his findings of fact and, if this is true, we should not interfere with such findings. The rule governing in compensation cases is correctly stated in Flint v. Eldon, 191 Iowa 845, 848, 183 N. W. 344, 345, as follows:

"In Rish v. Iowa Portland Cement Co., 186 Iowa 443, we said:

" 'The finding of the commissioner upon questions of fact is made conclusive and binding upon the court by the statute; but, if the facts found do not support the order, or if there is not sufficient competent evidence in the record to warrant the industrial commissioner in making same, such order may be set aside by the court.'

"Therefore, as to disputed facts which do not go to the jurisdiction, a court is bound by the finding of the commissioner. Bidwell Coal Co. v. Davidson, 187 Iowa 809; Pierce v. Bekins Van & Storage Co., 185 Iowa 1346; Pace v. Appanoose County, 184 Iowa 498.

"Such findings stand upon the same footing as the finding of a judge or the verdict of a jury. It is not to be set aside if there is any evidence upon which it can rest. In re Pigeon's Case, 216 Mass. 51. In the absence of fraud, an appellate court is not at liberty to interfere, if the facts proven are capable of sustaining the inferences of fact drawn from them. Papinaw v. Grand Trunk R. Co., 189 Mich. 441.

"If the evidence in the case supports the finding of fact, it may not be said that the commissioner acted without or in excess of his powers, even though a court, if trying the fact in the first instance, might reach a different conclusion. Milwaukee C. & G. Co. v. Industrial Commissioner, 160 Wis. 247. See, also, In re Burns' Case, 218 Mass. 8; In re Doherty's Case, 222 Mass. 98.''

It is true that there is no direct evidence bearing on the issue but there are certain known facts and circumstances which are undisputed from which legitimate inferences may properly be drawn which have the full force and effect of evidence, and, when a question involving the intent or motive, such as we have here, for making the attack upon the claimant, arises, the proof necessarily must depend largely upon inferences from the facts and circumstances shown and we have many times said, usually, this is a question for the jury. In this regard, the appellants say the natural inference is that, since the assailant, Goetz, was personally acquainted with plaintiff, the attack must have been made to avenge a wrongful act, either real or imaginary, and, hence, was for reasons personal to the employee. In this connection, they point out the absence of unfriendly relations with the only other occupant of the room, Bess Reed; that she testified that Goetz did not *appear* to be intoxicated; and that he singled out claimant and made a vicious assault upon him which would indicate that the attack was not made by reason of an ungovernable spasm of temper which sought outlet by attacking anybody or anything that might get in his way. On the other hand, the commissioner draws entirely different inferences and points out and finds, as a fact, that the attack was "wilful", meaning "governed by will without yielding to reason", but that there exists no basis for finding that Goetz made the attack because of any personal grudge or ill will or fancied wrong for the reason that their relations had always been friendly. They had never had any quarrels, crosswords or disagreements and that there is nothing in the record which points to any conduct on the part of Everts to change this relationship and the commissioner reasons that the attack made upon claimant would have been made upon any other person who happened to be located where claimant was

at the time the attack was made, the attack being "wilful without reason, perhaps superinduced by stimulants when his impulse to aggression was beyond control", or, being possessed at the time of an evil mind, made no attempt to control his impulse, and the commissioner finds that the only fair inference that may be drawn from the record facts is that Goetz did not entertain personal enmity against the claimant and that even fancied wrongs do not emanate from friendly relations. The commissioner further states:

"If the question of discharge has any bearing upon the case at bar, it must be said that if Goetz entertained hostile feeling against any person by reason of his discharge, it was against his employer. Thus, if the attack was made by reason of his discharge, it was because Goetz was ready and willing to vent his feelings against his employer or any person or thing that suited his purpose, not that he had any reasons personal against such person or thing, but merely as a means and method of giving vent to his pent-up feeling against his employer. * * * Such may have been true in the case at bar, but it falls far short of raising the bar within the meaning of the law as applied to the present case."

On the question as to what are proper and reasonable inferences to be drawn from the known and established facts and circumstances, we think it can fairly be said that the minds of reasonable men might differ. In support of his premise, we have only to point to the disagreement, concerning this matter, between the able and distinguished industrial commissioner and the able and learned counsel, Mr. Huebner, who represents the appellants.

In resolving this case in favor of the claimant, the commissioner placed upon the provisions of the Workmen's Compensation Act a liberal construction which is in accordance with the pronouncements of this court. Bidwell Coal Co. v. Davidson, supra; Porter v. Mapleton Elec. L. Co., 191 Iowa 1031, 183 N. W. 803; Walker v. Speeder Mach. Corp., 213 Iowa 1134, 240 N. W. 725; Shepard v. Carnation Milk Co., 220 Iowa 466, 262 N. W. 110.

We are constrained to hold that there was sufficient compe-

tent evidence to support the commissioner's findings; therefore, his order is binding upon the district court and upon this court.

For the reasons indicated, it follows that the decision of the trial court must be and is, accordingly, affirmed.—Affirmed.

OLIVER, C. J., and SAGER, BLISS, and STIGER, JJ., concur.

RICHARDS and HALE, JJ., concur in result.

MITCHELL and MILLER, JJ., dissent.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority and respectfully dissent.

The record shows that the assailant Goetz was personally acquainted with Everts, that Goetz was not intoxicated and according to the young lady with whom he had just danced, he was in a perfectly normal condition. Thus without any known reason Goetz attacked Everts in a brutal manner.

Upon such a record, it seems to me that the injury was caused by the wilful act of Goetz for personal reasons, for normal men do not attack others, without uttering a word, unless for personal reasons. I would reverse the case.

I am authorized to state that Justice Miller joins in this dissent.