33163. CHADWICK *v.* WHITE PROVISION COMPANY.

DECIDED JULY 14, 1950. REHEARING DENIED JULY 31, 1950.

*Dobbs & McCutchen,* for plaintiff.

*Smith, Partridge, Field, Doremus & Ringel,* for defendant

TOWNSEND, J.  (After stating the foregoing facts.)  Section 114-102 of the Code defines injury in its relation to the Workmen's Compensation Law as injury by accident arising out of and in the course of the employment.  Injury caused by the willful act of a third person directed against an employee for reasons personal to such employee are expressly excluded.  An insane person is incapable of committing a willful act, and the acts of such persons are in terms of law accidental to the person against whom they are directed.  See *Pan-American Life Insurance Co.* v. *Bagley,* 55 *Ga. App.* 610 (191 S. E. 144); *Gulf Life Insurance Co.* v. *Moore,* 82 *Ga. App* 136 (60 S. E. 547).  The terms "in the course of the employment" and "out of the employment" are not synonymous.  Both must concur in order for the case to be compensable.  An injury arises in the course of employment when it occurs while the workman is doing the duty which he is employed to perform.  *Ga. Ry. & Power Co.* v. *Clore,* 34 *Ga. App.* 409 (129 S. E. 799).  It is not contended by counsel for the employer that this injury did not arise in the course of the employment.  It is strenuously contended, however, that it did not arise out of the employment.

It is well settled that an injury arises out of the employment if after the event it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence.  See *Globe Indemnity Co.* v. *MacKendree,* 39 *Ga. App.* 58 (146 S. E. 46), 169 *Ga.* 510 (150 S. E. 849).  If the injury here arose out of the employment the right of the claimant to recover is established, otherwise it is lost, that being the sole issue in this case.  The question therefore to be decided is whether or not an injury arises out of the employment so that after the event it appears to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence, where an employee who is engaged in his regular employment is shot and killed by an insane fellow employee whose insanity is unknown

to the employer. That exact question has not been decided by the courts of this State. It is therefore proper to seek persuasive authority from decisions of the courts of foreign States. In 6 Schneider's *Workmen's Compensation Text* (Perm. ed.), p. 174, it is said: "If the conditions under which an employee's work is required to be done is more dangerous by reason of an irresponsible fellow employee, and injury results from such danger, the employee is generally held entitled to compensation for such injury. And while the knowledge of an employer of the vicious tendencies of an employee, either because he is at times somewhat mentally unbalanced, or habitually intoxicated and at such times quarrelsome and dangerous, is not essential to the recovery of compensation, it is often an important, if not controlling, element in weighing the compensability of an injury sustained in the course of the employment."

In Anderson *v.* Security Building Co., 100 Conn. 373 (123 Atl. 843), it is held as follows: "When an employer puts an employee at work on a machine—although the employer may have exercised all reasonable care to provide that it is safe—which, without fault on his part, has a latent defect which causes it to break down and injure the employee, the injury is unquestionably one arising out of a condition of his employment. It is immaterial, under the act, whether the employer knew or ought have known of the existence of the dangerous condition. So where a fellow servant by his negligence injures another employee, compensation is due for the injury, since it arose from a condition of the employment, to wit, the possibility of such negligence of a fellow servant. The knowledge of the employer as to the liability of the fellow servant to be negligent is immaterial. Such liability is a condition attending the employment. The situation here presented of an insane man running amuck, is in no way analogous to a case where a fellow-employee assaults another employee solely to gratify his feeling of anger or hatred; in such case 'the injury results from the voluntary act of the assailant and cannot be said to arise either directly out of the employment, or as an incident of it.' . . Whenever an employer puts his employees at work with fellow servants, the conditions actually existing—apart from the possibility of wilful assaults by a fellow servant independent of

the employment—which result in injury to a fellow employee, are a basis for compensation under the implied contract of that act. So in this case, although the employer may not have had knowledge actual or constructive that Markus, a fellow servant of the plaintiff, was insane and liable to run amuck, yet such liability of Markus to run amuck was in fact a condition under which the plaintiff was employed on the night in question, and if such condition of Markus caused an injury to the plaintiff, as it did, then the injury to the plaintiff arose out of his employment as truly as if it had arisen from the negligence of Markus in doing his work."

In John R. Kaiser Lumber Co. v. Industrial Comm., 181 Wis. 513 (195 N. W. 329) it was held in substance that the fact the claimant was required to sleep at a lumber camp provided by his employer in the same room with other employees subjected him to the risk of being attacked by a fellow employee suddenly becoming insane, and the injury arising out of such risk was therefore compensable as arising out of the employment. See also Katz. v. Kadans & Co., 232 N. Y. 420 (134 N. E. 330, 23 A. L. R. 401).

The rule is well stated in these cases, particularly the Connecticut case, wherein it is pointed out that should the employee be injured by a latently defective machine, unknown to the employer, such injury would nevertheless arise out of the employment and be compensable. Latently defective machinery can no more be anticipated and injuries thereby guarded against than latently defective minds of fellow employees, and vice versa.

It is insisted in the instant case that the decision should be controlled adversely to what is here held by *Maryland Casualty Co.* v. *Peek*, 36 *Ga. App.* 557 (137 S. E. 121). There the employee was required by his duties to ride trains from one city to another. While thus on a train, a fellow passenger who apparently became incensed at the conductor and, immediately following an altercation with him, fired a pistol at random in the coach killing Peek and another passenger. Compensation was denied on the theory that there was no causal connection between the accident and the employment. However, in the Peek case it does not appear that the assailant was insane. He was

not a fellow employee. Also, in that case Judge R. C. Bell, then on the Court of Appeals, dissented. Certainly that case is thus distinguishable on its facts from the instant case. It is also contended by counsel for the employer that the case here is controlled adversely to the claimant by *Clark* v. *Fitzgerald Mills Corp.*, 80 *Ga. App.* 312 (55 S. E. 2d, 762). In the *Clark* case it is pointed out by Judge Felton, speaking for the court, that Barnes, the assailant, was not at work when he went on his rampage and killed the two mill officers. That case is also in many ways distinguishable on its facts from the case at bar.

It is also insisted that the decision here should be controlled adversely to the claimant by *Georgia Casualty Co.* v. *Martin*, 157 *Ga.* 909 (122 S. E. 881). In that case a convict guard took a pistol from the pocket of another guard, they being fellow employees. After examining the pistol, playing with it, and making jocular remarks concerning it, the pistol was returned to its owner who accidentally discharged it, killing the guard who in the first instance removed it from his fellow employee's pocket. The director found that the widow claimant was not entitled to recover compensation because her husband's death did not arise in the course of his employment but came about through horseplay which he instigated. This finding was affirmed by the full board and by the superior court. The Court of Appeals reversed it and on certiorari the Supreme Court reversed the Court of Appeals, holding that the finding of the director was authorized by the evidence. Being, therefore, a "horseplay" case, it is not controlling here.

The facts as found by the Board of Workmen's Compensation require, under the law, the entry of an award in favor of the claimant and the trial court erred in affirming the board denying compensation. The case is reversed with direction that it be remanded to the Board of Workmen's Compensation and an award entered in favor of the claimant in accordance with the findings of fact made by that tribunal.

*Judgment reversed with direction. MacIntyre, P.J., and Gardner, J., concur.*