20582, 20583.   DAVIS *v.* UNITED AMERICAN LIFE INSURANCE CO.; and *vice versa.*

ARGUED SEPTEMBER 16, 1959—DECIDED OCTOBER 9, 1959—
ADHERED TO ON REHEARING NOVEMBER 4, 1959—
REHEARING DENIED NOVEMBER 19, 1959.

*Powell, Goldstein, Frazer & Murphy, Robert E. Coll, B. D. Murphy,* for plaintiff in error.

*Smith, Field, Doremus & Ringel, Sam F. Lowe, Jr., Alex W. Smith, Jr.,* contra.

DUCKWORTH, Chief Justice. ■ On rehearing this opinion is, by the court, being substituted for the opinion originally filed.

The confusing manner in which it was attempted to reform this policy as well as the arguments in support thereof require, we think, a fuller treatment than our original opinion gave it. There we briefly said that the alleged mistake was not mutual, and pointed out that the policy fixed the amount of premium at $750.48 until age 65 and thereafter at $655.88, due August 1 each year, while the application which is a part of the policy fixed the amount of the premium at $302.90 payable quarterly, and the only reformation sought was to make the first part read $750.48 to age 65, and $655.88 thereafter, due August 1, November 1, February 1, and May 1 of each year, with no mention of the premium fixed in the application. We assumed that the alleged mistake was so obviously that of the company alone and in no manner connected with the insured that discussion by the court was unnecessary to demonstrate that fact. But by referring to matters not in the policy, and by asserting that the policy contains something that is not in it, the motion for rehearing sharply challenges our ruling. It is asserted that the proposed change would be in harmony with the intention of the parties, although a contrary intention of both parties is unmistakably expressed in the portion of the policy consisting of the application. There the intention of the insured that the premium amount be $302.90, payable quarterly, is shown by his signature to the application, which fixed the amount at $294.33, payable quarterly, but expressly authorized the company to amend this, which the company did to make it $302.90. What the company now seeks to do is to make a belated counter-offer, after the policy has been in force and the insured is dead. The indisputable proof of a meeting of the minds in the application on the amount and method of paying the premium shows that the alleged mistake of the company's scrivener was that of the company alone, and both it and the intended provision were contrary to the intention of both parties. Being in no wise a mutual mistake, reformation was properly denied. Code § 37-207; *Quiggle* v. *Vining,* 125 *Ga.* 98 (54 S. E. 74) ; *Salvage Sales Co.* v. *Aarons,* 181 *Ga.* 133 (181 S. E. 584) ; *Helton* v. *Shellnut,* 186 *Ga.* 185 (197 S. E. 287) ; *Hill* v. *Agnew,* 199 *Ga.* 644 (34 S. E. 2d 702) ; *Yablon* v. *Metropolitan Life Ins. Co.,* 200 *Ga.* 693 (38 S. E. 2d 534).

Discussion of the numerous decisions of this court, holding that reformation therein was authorized—but every one of them stating that mutuality was essential to reformation, in the absence of fraud—cited by counsel for the company, is unnecessary further than to say that they, because of their facts, are wholly inapplicable here. Despite both established rules of law and the expressed provision of the policy, that the contract is the intention of the parties and cannot be altered by extrinsic evidence, counsel cite much evidence, admitted over objections on the trial, for proof of the intention of the parties as to what the premium should be, retaining a deadly silence as to the contrary intention expressed in the application part of the policy which they do not seek to reform. Then they refer to the automatic cash loan paragraph of the policy and firmly assert that it provides that the insurance company would lend the full cash value, at interest, "to be applied each quarter on the total premium then due in the amount of $750.48." There is simply not a word of the quoted language in the policy, nor is there any language that even hints at such. No grounds for reforming the policy as sought were shown, and the judgment of the court dismissing the cross-action, which is excepted to in the cross-bill, must be affirmed.

■ We believe that an interpretation of the insurance contract according to established rules will decide every question raised in the main bill of exceptions. The face of the contract shows undeniably that it contains two repugnant or contradictory clauses which fix the amount of the premium. In *Wood* v. *Phoenix Ins. Co.*, 199 *Ga.* 461 (34 S. E. 2d 688), this court had for construction a contract of sale of property, in which the consideration was stated in different amounts, and in an opinion prepared by Chief Justice Bell it was held that extrinsic evidence was admissible to explain the ambiguity. But in *McCann* v. *Glynn Lumber Co.*, 199 *Ga.* 669, 679 (34 S. E. 2d 839), in an opinion also prepared by Chief Justice Bell, it was said: "The construction of a contract, if needed, being a question of law for the court, as well as a duty that rests upon the court, *there can be no ambiguity* within the rule to which we have referred, *unless and until an application of the pertinent rules of inter-*

*pretation leaves it really uncertain which of two or more possible meanings represents the true intention of the parties."* (Italics ours.)

A pertinent rule for interpreting insurance contracts which contain contradictory clauses or other ambiguities is that they must be construed favorably to the insured and against the insurer. A statement of this rule as applied to contradictory clauses in an insurance contract is found in *Hodges* v. *Planters & Peoples Mut. Fire Assn. of Ga.,* 37 *Ga. App.* 203 (1) (139 S. E. 362), as follows: "Of two inconsistent clauses appearing in the body of an insurance policy, the one more favorable to the insured will be adopted." This rule is stated in 29 Am. Jur. 183, § 166, as follows: "Likewise, if there are conflicting or repugnant clauses in an insurance policy, the court will construe them in favor of the insured, so as to prevent a forfeiture." Cited to support this statement among other authorities, are Norwich Union Fire Ins. Soc. *v.* Cohn, 68 F. 2d 42, 94 L. R. A. 494; writ of certiorari denied in 291 U. S. 665 (54 S. Ct. 440, 78 L. Ed. 1056) ; and our own decision in *Massachusetts Benefit Life Assn.* v. *Robinson,* 104 *Ga.* 256 (30 S. E. 918, 42 L. R. A. 261).

This court has repeatedly applied the rule and stated it in different words, some of such decisions being *Massachusetts Benefit Life Assn.* v. *Robinson,* 104 *Ga.* 256 (2), supra, where it is said: "If a policy of insurance is capable of being construed in two ways, that interpretation *must* be placed upon it which is *most favorable to the insured"* (italics ours) ; and *Johnson* v. *Mutual Life Ins. Co.,* 154 *Ga.* 653 (1, 2) (115 S. E. 14), that, "If a policy of insurance is so drawn as to require an interpretation, and is fairly susceptible of two different constructions, the one will be adopted most favorable to the insured. Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms, prepared by experts at the insurer's instance, in the preparation of which the insured has no voice." Again it is stated in *Penn Mut. Life Ins. Co.* v. *Milton,* 160 *Ga.* 168 (1) (127 S. E. 140, 40 A. L. R. 1382): "If a policy of life insurance is capable of two constructions, that interpretation will be placed upon it which is most favorable to the insured."

With this array of authorities stating "a pertinent rule of construction," is there left a reasonable doubt as to what this court's duty is when confronted with this policy containing two conflicting and repugnant clauses that state the premium and manner of payment differently, the one fixing the amount at $750.48 payable yearly—which if adopted might render the policy void—and the other fixing the amount at $302.90 payable quarterly, which if adopted will preserve the policy and avoid a forfeiture? In our original opinion we took the portions of these two clauses most favorable to the insured, and while not now holding that this was wrong, we prefer to rest our ruling upon the acceptance of one entire clause to the exclusion of the other. The judicial reasoning upon which the rule rests, requiring courts to adopt of two conflicting clauses the one most favorable to the insured, is squarely bottomed upon the cardinal rule requiring effectuation of intent. The insurer is presumed to have intended that the clause most favorable to the insured be effective else it would not have inserted it in the policy it issued, and the insured is presumed to have chosen and intended to accept that which is most favorable to him. The clause fixing the amount of the premium at $302.90 payable quarterly is more favorable as to time of payment and preserves the contract and avoids a forfeiture, while the other clause might render this contract void.

Thus, when the pertinent rule for construing an insurance policy is applied, the contradiction vanishes, and this contract becomes plain and unambiguous in so far as the amount of the premium and time of payment are concerned—which is $302.90 payable quarterly. The defendant's answer admits that the insured paid the first quarterly premium of $302.90 on August 1, 1956, and the second quarterly premium of $302.90 on December 14, 1956, thus showing payment of the premium for one-half of a year. The policy provides that, if the premium for a year is paid, and the policy lapses for non-payment, it will be extended as term insurance for 2 years and 79 days, and that, when the premium has been paid for less than a year, the extended insurance is for a proportionate period, which is in this case one-half, or 1 year and 39 and ½ days. The default in premium payment causing the policy to lapse as alleged in the

answer, which is an admission that it had been in force, was on February 1, 1957, and the insured died April 24, 1957, in less than 3 months, which was clearly within the extended term insurance for over one year. Thus it is obvious that the policy was and is in force for the full amount thereof.

But the defense is, that the company under the automatic cash loan clause paid over eight hundred dollars on the premiums falling due on August 1 and November 1, and hence these loans with interest equalled the cash value of the policy and, under the terms of the policy, only such extended term insurance as the cash value less debts will purchase is available— consequently there was no extended insurance. Were the statement of facts correct, counsel's conclusions would be correct here. This argument is advanced and urged in the face of the indisputable fact that the entire amount of the premium is $302.90 as stated in the policy, and the answer admits that the insured paid this amount, thus leaving no part of the premium to be paid by the company under the automatic cash loan clause. The facts demand a decision that the claim of a loan and hence an indebtedness is unfounded.

Finally, counsel say that, when we follow controlling law and apply it to the policy their client wrote, we are giving it an unreasonable construction because the insured would thereby have obtained $100,000 insurance on his life for one-half a year by paying only $605.80 plus a cash value of $878.50; thus making his insurance come free together with $272.70 cash above what he paid. We agree with counsel that the policy is unreasonable, but it is the handiwork of the insurer and not this court. Our reply to such argument is similar to our replies to similar argument in *Lloyd Adams, Inc.* v. *Liberty Mutual Ins. Co.*, 190 *Ga.* 633, 640 (10 S. E. 2d 46): "Though admittedly the provisions of the amended section inevitably lead to a legal absurdity, this court has no choice but to take such an unambiguous law as it stands; and if it is absurd, so rule." And in *Cox* v. *Zucker*, 214 *Ga.* 44, 60 (102 S. E. 2d 580), we said, "The movant asserts that our ruling is absurd because we uphold but restrict his use of this driveway to the expressed and unqualified limita-

530

tion which he had written into his own deed.  If there is an absurdity, it is his and not ours."

From what we have ruled it follows that parol evidence was inadmissible to vary the terms of the policy, and the legal evidence in the case demanded a verdict in favor of the plaintiff. It was error to deny the motion for a new trial.

*Judgment affirmed on the cross-bill and reversed on the main bill.  All the Justices concur.*