## 65475. GENERAL AMERICAN LIFE INSURANCE COMPANY v. BARTH et al.

CARLEY, Judge.

Appellee-plaintiff was a part-time employee of the International House of Pancakes (IHOP). While taking stock inventory on the late shift, appellee was struck by a bullet and sustained injuries to his mouth, teeth and lips which required medical, surgical and dental treatment extending over a period of more than three years. The bullet had been fired by the owner of the IHOP restaurant, who, unbeknownst to appellee and his co-workers, was on the premises and whose reason for firing the shot has never

been explained.

Appellee successfully sued his assailant in tort and recovered $25,000. He also filed for workers' compensation benefits. Appellee entered into a stipulation of "no coverage" with IHOP's workers' compensation carrier but nevertheless received the sum of $10,000 from the carrier. Appellee also made a claim under his father's group policy with appellant-defendant General American Life Insurance Company. Appellant refused to honor the claim, relying on the following exclusion in the policy: "Benefits shall not be payable... for or in connection with (4) sickness covered by Workmen's Compensation law... or laws of a similar character; or injury arising out of or in the course of any occupation or employment for compensation, profit, or gain." Through his father, appellee twice more made demand for payment upon appellant, but was refused on the same grounds.

Appellee then brought the instant action against appellant for unreimbursed medical expenses. The case was tried before a jury, and a verdict was returned awarding appellee benefits under the policy, bad faith penalties, and attorney fees. Appellant, having unsuccessfully moved for a directed verdict, moved for judgment n.o.v. This motion was likewise denied. Appellant appeals, enumerating as error the denial of its motions for directed verdict and judgment n.o.v.

Appellant asserts that the above quoted exclusion applies because appellee was injured while clearly "in the course of employment" as that term is defined in Georgia law.

In support of its contention, appellant cites a number of workers' compensation cases that have held that a person fortuitously shot at his workplace, under circumstances as clearly unrelated to the victim's actual duties as was the shooting of appellee in the instant case, was injured "in the course of" his employment. See *Gen. Fire & Cas. Co. v. Bellflower,* 123 Ga. App. 864 (182 SE2d 678) (1971); *Chadwick v. White Provision Co.,* 82 Ga. App. 249 (60 SE2d 551) (1950); *Fidelity & Cas. Co. v. Barden,* 79 Ga. App. 260 (54 SE2d 443) (1949). "The words 'in the course of the employment' relate to the time, place and circumstances under which the accident takes place..." *New Amsterdam Cas. Co. v. Sumrell,* 30 Ga. App. 682, 688-689 (118 SE 786) (1923).

Under the rationale of the cases cited above, appellee was clearly "in the course of" his employment when he was injured. Appellee attempts to distinguish those cases by pointing out that they involved workers' compensation. It is true that "these workers' compensation cases are not directly applicable to the issues... presented in the case at bar. However, the reasoning employed therein in determining

whether or not the particular injury in question occurred during the scope of the employee's employment appears to be sound and logical and we see no reason why the same logic should not apply to the case at bar." *IBM v. Bozardt,* 156 Ga. App. 794, 799 (275 SE2d 376) (1980) (cert. denied). Accordingly, we find that the injury which forms the basis of appellee's claim arose "in the course of" his employment and, therefore, there is no coverage.

*United Benefit Life Ins. Co. v. Glisson,* 105 Ga. App. 122 (123 SE2d 350) (1961) does not compel a different result. It is true that in *Glisson,* this court interpreted the particular language involved in that policy as not relieving the insurer of liability "as a result of accidental injuries to [the insured] simply because he sustained such injuries while performing duties in the course of his employment, unless he would have a cause of action for such expenses under the [Workers'] Compensation Act or similar legislation." *United Benefit Life Ins. Co. v. Glisson,* supra at 124. There is, however, a fundamental difference between the ambiguous language in the policy under consideration in *Glisson* and the clear and unequivocal wording of the policy in the instant case. In *Glisson,* the policy provided that there would be no coverage for "accidental bodily injuries arising out of or in the course of the employment of the protected person or his dependents or sickness covered by a Workmen's Compensation Act or similar legislation." p. 124. The court in *Glisson* held that in order to be excludable under the policy, an accident must not only have arisen out of or in the course of employment, but it must *also* be covered by the Workers' Compensation Act. Such a construction of the policy provisions in this case is not reasonable. As noted above, appellee's policy excludes coverage for "sickness covered by Workmen's Compensation law, occupational disease law, or laws of a similar character; *or injury arising out of or in the course of any occupation or employment for compensation, profit or gain . . .*" (Emphasis supplied.) Thus, in appellee's policy, there is a semicolon separating the language concerning coverage under workers' compensation laws and laws of a similar character from the language dealing with the exclusion for injury "arising out of *or* in the course of . . . employment." It is therefore clear that the exclusion based upon coverage under workers' compensation is separate from the exclusion relating solely to an injury arising out of or in the course of employment and that the latter non-coverage provision is disjunctive in nature. Thus, regardless of workers' compensation coverage, it is clear that there is no coverage under the relevant exclusionary language of the instant policy if the injury arose either out of *or* in the course of employment. As noted above, the injury which forms the basis of appellee's claim

arose "in the course of" his employment and, therefore, there is no coverage.

Moreover, we find that there is no coverage in this case for another reason. In *Cantrell v. Home Security Life Ins. Co.,* 165 Ga. App. 670 (302 SE2d 415) (1983), the same type of "stipulation" regarding "no coverage" under the Workers' Compensation Act was entered into as is involved in the instant case. *Cantrell* is applicable and controlling and, here as there, the relevant policy language "must be construed to exclude coverage when workers' compensation benefits are actually paid, irrespective of whether or not there is an adjudication on the merits of compensability by the Board." *Cantrell v. Home Security Life Ins. Co.,* supra at 671.

For all of the above reasons, the trial court erred in failing to grant a directed verdict for appellant on the ground that the policy afforded no coverage for appellee. There being no coverage under the policy, appellee's judgment for bad faith penalties and attorney fees was likewise unauthorized.

*Judgment reversed. Shulman, C. J., Banke, Birdsong, Sognier and Pope, JJ., concur. Deen, P. J., Quillian, P. J., and McMurray, P. J., dissent.*

DECIDED JULY 15, 1983 —
REHEARING DENIED JULY 28, 1983 —

*Theodore G. Frankel,* for appellant.
*James M. Crawford, Stuart W. Snow,* for appellees.

DEEN, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion. I agree with the majority that under the rationale of the cases cited, appellee was clearly "in the course of" his employment when he was injured. As appellee points out, however, the cases cited by appellant were all Workers' Compensation cases, and the remedial purpose underlying Workers' Compensation would necessarily color the court's construction of the "in the course of" language in which those particular statutes are couched. However, appellee cites other cases that involve language closely similar to that in Barth's insurance policy and that nevertheless hold the insurer liable unless the injured person was also covered by Workers' Compensation. See *United Benefit Life Ins. Co. v. Glisson,* 105 Ga. App. 122 (123 SE2d 350) (1961). In the instant case appellee indisputably was not covered by Workers' Compensation, as evidenced by the stipulation entered into by the Barths and IHOP's carrier, even though the reasons for lack of coverage were not spelled out in the record. Moreover, it cannot reasonably be contended that the risk of being shot — particularly by

one's employer — is an occupational hazard ordinarily to be expected to "arise out of" or occur "in the course of" the occupation in which appellee was engaged.

*Cantrell v. Home Security Life Ins. Co.,* 165 Ga. App. 670 (302 SE2d 415) (1983), is illuminating on this issue. In *Cantrell* the appellant had received an injury consisting of a gradual worsening of a pre-existing back condition — clearly an injury of the type contemplated by Workers' Compensation statutes, whether or not the specific circumstances surrounding this particular injury would affect the coverage in this instance. Appellant entered into a "no liability" stipulation and received a $20,000 award. Additionally, the workers' compensation carrier paid more than $9,000 in medical expenses.

*Cantrell* can be distinguished from the case *sub judice* in two significant respects. The first is the nature of the injury. Ms. Cantrell's injury occurred over a period of time spent on the job and resulted from no blow, trauma, or external violence, in striking contrast to the injury received by appellee Barth. The second distinction is that, despite the "no liability" stipulation, the workers' compensation carrier not only awarded $20,000 but paid medical expenses. Thus there was no dispute in *Cantrell* as to the facts that the injuries were of the sort ordinarily covered by workers' compensation statutes, or that they fell squarely within the terms of Cantrell's policy, which provided compensation for any injury "which does not arise out of or in the course of any employment by the employer, and . . . for which he is not entitled to benefits under any workers' compensation law." We affirmed summary judgment for appellee.

In a recent case cited in *Cantrell, King v. Public Savings &c. Ins. Co.,* 162 Ga. App. 49 (290 SE2d 134) (1982), the appellant received an injury that was clearly compensable under workers' compensation, which paid all expenses incident to his two-month hospitalization. His insurer denied his claim on the basis of an exclusion which stated that the policy "does not provide any benefits . . . for which no charge is made that the insured is required to pay." This court, noting the ambiguity of the language "required to pay," held for appellant King. We reasoned that, although the payment for medical expenses was actually made by the workers' compensation carrier, nevertheless, had the carrier refused to make it, the appellant would have been held responsible by the creditor hospital and physicians. In the instant case, in which workers' compensation made no payment for medical expenses, the same reasoning, adjusted to the facts, should *a fortiori* compel the same result. Appellee Barth received an injury of a sort not ordinarily associated with activity "arising out of" or "in the

course of" employment; he was specifically denied workers' compensation coverage; he (or his father, the primary insured under appellant's policy) was responsible for payment of his medical expenses. Recovery from a collateral source or sources would not affect the result.

Moreover, I cannot agree with the majority's assertion that the presence of a semicolon between two disjunctive clauses in appellee's insurance policy suffices to distinguish the fact situation in the instant case from that in *United Benefit Life Ins. Co. v. Glisson,* supra. In *Glisson* the clauses at issue — clauses containing language functionally identical with, and literally all but identical with, that in our case — had no semicolon or other punctuation mark separating the two disjunctive clauses. In and of itself, the semicolon carries no substantive significance, whether disjunctive or conjunctive or otherwise; it is the disjunctive conjunction "or" which carries the meaning. The function of the semicolon in appellee's otherwise almost verbatim clauses is merely to facilitate the reading of the sentence, rather than to carry any substantive disjunctive significance over and above that imparted by the disjunctive conjunction "or" itself. To advert to the presence or absence of the semicolon is to make a distinction without a difference.

Furthermore, it is well settled that, when an insurance policy is capable of two constructions, it must be construed so as to favor the insured rather than the insurer. *Davis v. United American Life Ins. Co.,* 215 Ga. 521, 527 (111 SE2d 488) (1959). *Marsh v. Zurich Ins. Co.,* 118 Ga. App. 409 (163 SE2d 867) (1968); *United Benefit Life Ins. Co. v. Glisson,* supra. In view of the above considerations, it is apparent that the evidence in the case mandated neither a directed verdict for appellant nor judgment n.o.v. OCGA § 9-11-50 (Code Ann. § 81A-150). The trial court therefore properly denied appellant's motions with regard to Count I.

As to Count II, appellant's contentions also appear to be without merit. Although there was evidence that would have authorized the jury to find for appellant on these issues, it was not of such nature as to preclude a finding of the converse. The issue of bad faith should be taken from the jury only when no evidence of bad faith is introduced. *Interstate Life & Accident Ins. Co. v. Brown,* 146 Ga. App. 622 (247 SE2d 205) (1978). The trial court therefore did not err in denying appellant's motions regarding Count II.

For these reasons I respectfully dissent.

I am authorized to state that Presiding Judge Quillian and Presiding Judge McMurray join in this dissent.