**PETROLEUM CASUALTY CO. v. KINCAID et al.**

No. 1531.

Court of Civil Appeals of Texas. Eastland.

March 27, 1936.

Rehearing Denied April 24, 1936.

Knox W. Gilmore, of Houston, and L. H. Welch, of Breckenridge, for appellant.

Floyd Jones and Ben J. Dean, both of Breckenridge, for appellees.

FUNDERBURK, Justice.

C. O. Hoskins, an employee of Humble Pipe Line Company, was shot and killed by J. G. Moore, another employee of said company. Hoskins at the time was engaged in or about the furtherance of the affairs or business of his said employer. The employ-

**500**

er carried compensation 'insurance with Petroleum Casualty Company. An award of the Industrial Accident Board having been made, after due notice and claim for compensation, said insurance carrier duly filed this suit to set it aside. By cross-action Mrs. B. F. Kincaid (née Hoskins) for herself and as next friend for Juanita Hoskins, an adopted minor daughter, asserted their cause of action for compensation. Upon a nonjury trial, judgment was given for plaintiffs, $200 being allowed Dr. G. C. Wood to cover a medical bill. Petroleum Casualty Company has appealed.

Appellant, by a combined assignment of error and proposition, presents the sole contention, in effect, that under the findings of the court based upon uncontradicted evidence the death of Hoskins was not an "injury sustained in the course of employment" as that term is defined in R.S.1925, art. 8309, second subsec. 2, § 1, because it comes within the statutory exception reading: "An injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment." We take it to be conceded, or at least not contested, that Hoskins' death was an injury "having to do with and originating in the work, business," etc., of the Humble Pipe Line Company, and was therefore "an injury sustained in the course of employment," unless the uncontroverted evidence established conclusively (as a matter of law) that Hoskins' death was "caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee or because of his employment."

The usually troublesome question of whether the injury was one "having to do with" and "originating in" the work or business of the employer is not involved. In other words, in so far as any challenge is made of the correctness of the proceedings culminating in the judgment, the death of Hoskins was compensable unless Moore's act in shooting him was intended to injure Hoskins because of reasons personal to Hoskins and not directed against him as an employee or because of his employment.

Material conclusions of fact were: "J. G. Moore shot and killed Charles O. Hoskins on account of a belief on the part of J. G. Moore that the said Charles O. Hoskins was intimate with the wife of the said J. G. Moore, or was attempting to impose himself upon the wife of the said J. G. Moore"; that

"this belief on the part of the said J. G. Moore was a hallucination and no reasonable grounds upon which to base said belief [existed] and that the said Charles O. Hoskins had never been intimate with the said wife of the said J. G. Moore at any time, but that the said J. G. Moore honestly believed that the said Charles O. Hoskins was intimate with the wife of the said J. G. Moore or was attempting to be intimate with her"; that "such hallucination on the part of J. G. Moore resulted from and was caused by the fact that the duties of the employment of Charles O. Hoskins with his employer * * * required him to frequent the Chaney Pump Station of the Humble Pipe Line Company to inspect the telephone lines and apparatus in said station, and to test said lines and to make reports of trouble or corrections of trouble and on two occasions required him to visit the home of the said J. G. Moore, one to put in a telephone and one to remove a telephone from said residence"; that "J. G. Moore lived near said Chaney Pump Station"; that "J. G. Moore and Charles O. Hoskins never at any time had any difficulty or trouble over their work, or employment, or at any time had any harsh words or trouble concerning their respective employment or duties with the said Humble Pipe Line Company, and that the only trouble existing between the said J. G. Moore and Charles O. Hoskins was the hallucination of the said J. G. Moore that Charles O. Hoskins was having, or attempting to have improper relations with the wife of the said J. G. Moore"; that "on the date of the fatal shooting said J. G. Moore manipulated the telephone test board in the Chaney Pump Station in order to put the line out of order knowing that it would be the duty of, and that the said Charles O. Hoskins would be sent there to repair it"; that "Moore concealed his automobile * * * in order that his presence at the pump station would not be discovered"; that "prior to the date of the killing it had been made known to the Division Superintendent and the district foreman of the Humble Pipe Line Company that said J. G. Moore harbored in his mind against Charles O. Hoskins a suspicion of improper conduct on the part of the said Charles O. Hoskins with the wife of J. G. Moore and that said J. G. Moore having requested of the district foreman of the Humble Pipe Line Company that he be transferred out of the territory in which Mr. Hoskins worked, or that deceased Charles O. Hoskins be transferred out of the territory in which he, the said J.

G. Moore worked; that after these suspicions were made known to the Division Superintendent and the district foreman, both talked to the said J. G. Moore and believed that everything had been straightened up."

Do the foregoing facts, given, as they must be, their fullest reasonable effect in support of the judgment, establish conclusively that Hoskins' death was "caused by an act" of Moore "intended to injure" Hoskins "because of reasons personal to him [Hoskins] and not directed against him as an employee or because of his employment?" We do not think so.

According to the findings, the belief of Moore, because of which he killed Hoskins, was an "hallucination." The word "hallucination" has been said to be something in the nature of a delusion. 32 C.J. 611, § 69. Distinguishing between hallucination and delusion, it was said in Bensberg v. Washington University, 251 Mo. 641, 158 S.W. 330, 333: "Hallucinations are tricks of the senses. One may see, in delirium tremens, spiders, serpents, or bugs where there are no such things. Delusions are false *beliefs*, as when one believes that another is his enemy or that he is pursued by persons who are trying to do him harm, or that he is the object of persecution or is being poisoned." (Italics ours.) It is clear enough that the trial judge in his employment of the word "hallucination" as descriptive of a *belief*, and not as descriptive of some sense impression, used the term as meaning the same as delusion. "Delusion" is variously defined, as, for instance, "a delusion is a belief in a state or condition of things, the existence of which no rational person would believe." Or, "a belief of facts which no rational person would have believed," or, "a diseased state of the mind in which persons believe things to exist, which exist only, or to the degree that they are conceived of only, in their own imaginations, with the persuasion so fixed and firm that neither evidence nor argument can convince them to the contrary." Or, "a false conception and persistent belief, unconquerable by reason, of what has no existence in fact," etc. 32 C.J. 604, § 50.

In support of the judgment, we must give to the unchallenged findings upon which it depends such a construction as will effect that end if they reasonably permit of it. So construing them, we think that the act of Moore must be regarded the same as that of an insane person.

Does the Workmen's Compensation Law deny compensation to an employee, himself blameless of any wrongdoing, who is shot down while engaged in or about the furtherance of the affairs or business of his employer when such act is due to "insanity" or "a belief in a state or condition of things, the existence of which no rational person would believe?" That is the question for decision here.

The correct answer, we think, may properly depend upon the reason why the Legislature saw fit to exclude from the benefits of the Workmen's Compensation Law an employee receiving an injury of the character described in this exception. It was evidently recognized that some employees by their character and manner of life were provocative of acts against them, such as assaults in retaliation or resentment of conduct having no relation to any employment, but likely to occur while the employee was in the course of his employment, while others by their character and manner of life were not provocative of such injuries. It was a question of public policy as to whether industry should bear the burden of compensating such injuries. The decision, as evidenced by the exception, was to exclude them. But, is it reasonable to ascribe the intention to exclude as compensable an injury which, although apparently coming within the terms of the exception, does so only because the actor was impelled thereto by a delusion? If so, then an employee the least likely to provoke acts against him of the kind within the exception would be denied compensation just the same as one the most expected to do so. In other words, the real reason for the exception would not control the award or denial of compensation.

Let us suppose that Moore, entirely friendly with Hoskins, had shot at a rabbit and unintentionally killed Hoskins. Or, suppose the lease upon which the pump station was located had been infested with rattle snakes and one had bitten him while in the discharge of his duties. Or suppose a dog with rabies had been in the pumphouse and had bitten him. In any of such instances would there be any question but that the injuries were compensable? Within the reason of the exception, we see no difference between the circumstances of this case and those.

In Jefferson Standard Life Ins. Co. v. Myers (Tex.Com.App.) 284 S.W. 216, 217, there was considered an exception from the double indemnity provision of an insurance

policy, to the effect that there was to be no liability for death due to "bodily injury inflicted by another person." The insured was injured, or killed, by an insane person. It was held that when "one 'inflicts' injury, he 'acts'" and that "acts" imputed intention, and, therefore, the exception did not exclude liability for the death of the insured by being shot by an insane person. In Texas Life Ins. Co. v. Plunkett (Tex.Civ.App.) 75 S.W.(2d) 313, it was conceded by appellant that ordinarily an exception from liability under a double indemnity provision of an insurance policy of "homicide" meant *intentional* homicide, so that homicide by an insane person did not come within the exception. In the exception we are now considering there were these elements: "Acts," "intended," "reasons," "personal to the employee." If an employee be injured under circumstances entitling him to compensation except only as the liability to him may be excluded by the provision of second subsection 2, of section 1, R.S.1925, art. 8309, then we believe that there is no such exception shown when the act causing the injury is that of a person incapable of entertaining a rational intention or incapable of reasoning.

We therefore are of the opinion that the judgment of the court below should be affirmed, and it is so ordered.