[Civ. No. 16846. First Dist., Div. One. Feb. 16, 1956.]

PACIFIC EMPLOYERS INSURANCE COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and VIRGINIA R. DECKER et al., Respondents.

Mullen & Filippi for Petitioner.

Everett A. Corten and Daniel C. Murphy for Respondents.

PETERS, P. J.—The widow and five minor children of Clyde Decker filed an application with the commission claiming that Decker was killed in the course of his employment, and that the death arose out of the employment. The commission so found and awarded the widow and children the benefits provided in the Workmen's Compensation Act. The insurance carrier of the employer challenges the award, contending that the death did not arise out of the employment, but arose out of personal animosity between the deceased and a fellow employee. As such, so it is claimed, the death is not compensable.

Decker was employed as an engraver for Granat Brothers, and had been so employed for some 16 years prior to his death. Working with Decker was a fellow employee by the name of Schultz who had worked for Granat Brothers for some 9 or 10 years. The two men worked in the same room, side by side, Schultz being superior in rank to Decker. Schultz was in fact completely deaf, and had been so for many years. He was also reputed to be a mute, but in fact possessed the power of speech. No one at his place of employment, prior to the assault, had ever heard Schultz speak a word. Decker possessed the ability to communicate with

Schultz by sign language, and orders from superior employees to Schultz were customarily relayed through Decker. Decker had no social contacts with Schultz, his only contact being on the job. Although the two men were apparently friendly, there had been some friction between them. About a year and a half before the assault Schultz had written a note to his boss complaining that Decker was not turning out enough work. The boss could find no evidence that this was true. Decker, shortly before his death, had told his family that Schultz was making a lot of mistakes and because of his superior position was taking all the easy work, leaving Decker to do the hard work. Decker also told his wife that when he complained to Schultz the latter became violently angry.

On the morning of November 8, 1954, shortly after the two men had arrived at work, Decker complained to his foreman that Schultz had hit him. While Decker was talking to his foreman, Schultz walked over from his bench with a revolver in his hand and shot and killed Decker. Schultz was then disarmed. The foreman asked him why he had killed Decker, and was astonished when Schultz replied "You know damn well why I did it." Although the foreman had been Schultz's boss for nearly 10 years, this was the first time he or any other employee at Granat Brothers had ever heard Schultz speak a word.

Schultz was charged with murder, and Dr. Poliak, a psychiatrist, was appointed by the court to examine him, which he did on several occasions. He communicated with Schultz either by means of written questions or through a sign language interpreter, and Schultz replied either orally or through the interpreter. Dr. Poliak testified that Schultz told him that he shot Decker because he believed that Decker was spreading stories among the employees and neighbors of Schultz that he, Schultz, was a sex pervert and was faking being a deaf mute. He also told Dr. Poliak that he believed that Decker had planted a dictaphone in the Schultz home to find out if Schultz was a faker. Dr. Poliak was of the opinion, based upon his examination, that Schultz was a paranoic schizophrenic who was mentally unbalanced; that he had been suffering from the delusion of persecution by Decker for over a year; that during this period he could have erupted at any time, and that because he was deaf and did not speak, his inward feelings of hatred were hard to detect.

On this evidence the commission found that the death of

Decker arose out of and happened in the course of the employment. The petitioner argues that, as a matter of law, the attack arose from personal motives; that the place of employment just happened to be the locus of the assault; that the possibility of such assault was not a risk of the employment; and that the employer was ignorant of Schultz's condition. Under such circumstances, it is argued, the death is not compensable.

It is undoubtedly the law that when a workman is not exposed to a peculiar risk because of his employment but is only exposed to a risk common to the general public, and is injured by that source, the injury is not compensable. More specifically, it is well settled that injuries resulting from assaults by fellow workmen when the attack results from personal animosity unconnected with the employment, are not compensable. (See cases collected and analyzed in 1 Larson, Workmen's Compensation Law, p. 109; Horovitz on Workmen's Compensation, p. 136.) But this rule is inapplicable if the employment increases or contributes to the risk of assault. The question here is whether, under any reasonable interpretation of the evidence, the assault by Schultz, who was laboring under an insane delusion of persecution by Decker and who had no real grievance against Decker but only thought he did, can be said to have been a risk of the employment.

This precise point does not seem to have been directly passed on by the appellate courts of this state. Although there may be some conflict in the decisions of other states, the weight of authority, and certainly the better reasoned cases, hold that when a fellow employee goes insane and kills or attacks a fellow employee the injury or death is compensable.

One of the better reasoned cases is *Chadwick* v. *White Provision Co.*, 82 Ga.App. 249 [60 S.E.2d 551], where numerous cases are discussed. Chadwick was employed as a meat cutter and was shot and killed by a fellow workman who went insane. The employer was ignorant of the fellow worker's condition. The commission held the death not compensable, but this was reversed. It was held that the employment added to the risk of such assaults; that the injury had its origin in a risk connected with the employment; that it flowed from that source as a rational consequence, and was therefore compensable.

Another well reasoned case is *Anderson* v. *Security Bldg.*

*Co.,* 100 Conn. 373 [123 A. 843, 40 A.L.R. 1119], where a janitor went crazy and shot a fellow employee against whom he had no special grievance. The injury was held to have arisen out of the employment and, therefore, compensable. The court first reasoned that there was no legal distinction between a situation where an employee is injured by a latent defect in a machine which was unknown to the employer, and the situation where the employee is injured by reason of a latent defect, insanity, of a fellow employee. The court then stated (p. 844 [123 A.]) :

"Whenever an employer puts his employees at work with fellow servants the conditions actually existing, apart from the possibility of wilful assaults by a fellow servant independent of the employment, which result in injury to a fellow employee, are a basis for compensation under the implied contract of that act. So in this case, although the employer may not have had knowledge actual or constructive that Markus, a fellow servant of the plaintiff, was insane and liable to run amuck, yet such liability of Markus to run amuck was in fact a condition under which the plaintiff was employed on the night in question, and, if such condition of Markus caused an injury to the plaintiff, as it did, then the injury to the plaintiff arose out of his employment as truly as if it had arisen from the negligence of Markus in doing his work. . . .

"It is the actual conditions under which the employment is carried on that is important; not the conditions under which parties know or suppose that it is carried on. The possibility that a fellow servant may be or become insane and run amuck is a condition under which one employed with fellow servants is required to perform his work." (See also *Dodson* v. *F. W. Woolworth Co.,* 118 Neb. 276 [224 N.W. 289].)

Petitioner contends that whatever the rule may be in other states the rule in California is that such injuries are not compensable. In support of this contention *Royal Indem. Co.* v. *Industrial Acc. Com.,* 192 Cal. 675 [221 P. 371], is cited. That case, involving an employer of a chauffeur and a cook, was decided by a divided court. One night, while discussing business with her chauffeur, the employer became disturbed by noises from the lower floor of the house. She asked the chauffeur to accompany her to investigate. The two proceeded to the lower floor and discovered that the noises had been made by the cook. The employer was satisfied and

turned to go back upstairs when the cook suddenly produced a gun, shot and killed the chauffeur, and then committed suicide. The Supreme Court, by a 4 to 1 decision, annulled an award in favor of the dependents of the chauffeur. The basis of the decision is to be found in the following quotation (p. 676): ''Assuming that the direction by the employer to the chauffeur to accompany her downstairs to repel suspected burglars brought the transaction within the course of his employment, so that if he had been killed or wounded in preventing a burglary, the injury would have been compensable, because arising out of his employment, it is clear that the death of the deceased did not arise out of such employment, but that he was killed from motives of a private revenge or for some other reason pertaining to him individually and not arising out of the employment. The employer would never have directed the deceased to accompany her for the purpose of overcoming the Chinese cook, and, immediately upon discovering his presence, she was satisfied that their errand had been unnecessary and fruitless. Neither the employer nor the deceased anticipated the tragedy which immediately followed. The award must be annulled.''

While this case has some features analogous to those involved in the instant case, it is not controlling. In the Royal Insurance Company case there apparently was no evidence of the motive for the killing. The majority of the court strongly implied that it must infer that the killing was motivated by something other than the employment. The opinion does not state that the cook was insane. Here Schultz was insane and the cause of the assault is known—the insane delusion that Decker, his coemployee, was persecuting him.

In the instant case the report of the referee who heard the evidence indicates that he was well aware of the rule that assaults between fellow workmen that grow out of personal animosity are not compensable. But, in holding that that rule was not applicable to the present case, the referee pointed out that there was no evidence of any dispute between the employees immediately before the assault; that Schultz was suffering from an insane delusion that Decker was persecuting him; and then pointed out that the only association of these two men was at work, that Decker was used by the employer as a conduit to convey messages to Schultz and then concluded: ''The most reasonable inference appears to be that the incident was the outgrowth of Schultz's delusions, which centered themselves around deceased because of his

prominence and importance in the employment activities of this insane man. It was only because of the employment that these men were brought together and this situation was created. It is, then, comparable to the situation . . . where the injured employee was allowed to recover because employment put him in a place or position of peril or danger.''

We agree with this reasoning. Schultz had no grievance, personal or otherwise, against Decker—he only thought he had because of his mental condition. Because of that condition Schultz had delusions of persecution which he centered upon the person with whom he worked. That person was Decker with whom he worked for almost 10 years. Decker's only contact with Schultz was the employment contact, and Decker was the means of communication between the employer and Schultz. There was some irritation between the two that grew out of the work relationship. Under these circumstances it seems clear that the employment increased the risk to Decker that such an insane man would be likely to pick on him. The risk was far greater than that incurred by the public generally. This being so, the evidence supports the finding that the injury causing death arose out of the employment.

The award is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.