PHIL CUMMINGS, ADMINISTRATOR OF THE ESTATE OF
AIME PEROT, ALSO KNOWN AS AIME JEAN PEROT;
HENRI PEROT AND JANE PEROT, HUSBAND AND
WIFE, APPELLANTS, v. UNITED RESORT HOTELS,
INC., A NEVADA CORPORATION, AND KARAT, INC., A
NEVADA CORPORATION, DOING BUSINESS AS STAR-
DUST HOTEL; AND KHALIL BEN MAATALLAH,
RESPONDENTS.

No. 5595

January 10, 1969                    449 P.2d 245

*Foley Brothers,* of Las Vegas, for Appellants.

*Deaner, Butler & Adamson,* and *Cromer and Barker,* of Las
Vegas, for Respondents.

# OPINION

By the Court, BATJER, J.:

On February 26, 1965, Aime Perot, an employee of United Resort Hotels, Inc., a Nevada corporation, while on its premises in the Stardust Hotel's locker room and preparing to report to work, was stabbed to death with a knife by Khalil Ben Maatallah, a fellow employee. Perot's parents and the administrator of his estate brought this action for his wrongful death. Following the filing of interrogatories by the parties, the respondent moved for a summary judgment which was granted by the district court. The motion for summary judgment was supported by affidavits and opposed by counter affidavits.

The assailant Maatallah, was suffering from a severe mental illness at the time of the assault, and the record indicates that the respondent employer had actual or constructive knowledge of his propensities for violence.

As affirmative defenses, the respondents, United Resort Hotels, Inc., and Karat, Inc., pled that all parties were subject to the provisions of the Nevada Industrial Insurance Act, and that the injury sustained by Perot was received in the course of and arose out of his employment.

The appellants claim that the district court erred in granting summary judgment because there remained a genuine issue as to material facts and that the respondents were not entitled to judgment as a matter of law.

In support of their position, appellants contend that the district court was wrong when it ruled as a matter of law that appellants exclusive remedy was under the Nevada Industrial Insurance Act (NRS Chapter 616), because the respondent employer had failed to provide and secure workman's compensation, and because an injury as a result of an assault by an

insane co-employee, on the premises of the employer does not as a matter of law arise out of the employment.

The appellants first urge that they should be allowed to maintain this action under NRS 616.375[1] because of the respondent employer's failure to report the accident and injury as required by NRS 616.340[2] and NRS 616.345[3]. We find these contentions to be without merit.

NRS 616.375 gives the employee the right to bring an action at law against an employer who fails to provide and secure compensation under NRS Chapter 616. Appellant maintains that non-compliance with NRS 616.340 and NRS 616.345, amounts to failure to provide and secure compensation. The

---

[1]NRS 616.375. "1. If any employer within the provisions of NRS 616.285 fails to provide and secure compensation under this chapter, any injured employee or his dependents may bring an action at law against such employer for damages as if this chapter did not apply.

"2. The injured employee or his dependents may in such action attach the property of the employer at any time upon or after the institution of such action, in an amount fixed by the court, to secure the payment of any judgment which is ultimately obtained. The provisions of chapters 31 and 71 of NRS shall govern the issuance of, and proceedings upon, such attachment.

"3. In such action as in this section provided, the employer shall not escape liability for personal injury or accident sustained by an employee of such employer, when the injury sustained arises out of and in the course of the employment, because of any of the defenses set forth in subsection 1 of NRS 616.300, and in such case the same presumptions as set forth in subsection 2 of NRS 616.300 shall apply."

[2]NRS 616.340. "1. It shall be the duty of every employer within the provisions of this chapter, immediately upon the occurrence of an injury to any of his employees, to render to the injured employee all necessary first aid, including cost of transportation of the injured employee to the nearest place of proper treatment where the injury is such as to make it reasonably necessary for such transportation.

"2. The employer shall forthwith notify the commission of the accident, giving:

"(a) The name of the injured employee.

"(b) The nature of the accident.

"(c) Where and by whom the injured employee is being treated.

"(d) The date of the accident."

[3]NRS 616.345. "1. Every employer within the provisions of this chapter, and every physician and surgeon who attends an injured employee within the provisions of this chapter, shall file with the commission, under rules and regulations as the commission may from time to time make, a full and complete report of every known injury to an employee arising out of and in the course of his employment and resulting in loss of life or injury to the person.

"2. Reports shall be furnished to the commission in form and detail as the commission may from time to time prescribe, and shall contain special answers to all questions required by the commission under its rules and regulations."

26

affirmative defense that the respondent, United Resort Hotels, Inc., had in fact secured industrial insurance pursuant to NRS Chapter 616, is undisputed. However, the record indicates that neither the appellants nor respondents reported the injury and death of Perot to the Nevada Industrial Commission.

Although the respondent employer might be subject to a fine as provided in NRS 616.650,[4] for failure to comply with the provisions of NRS 616.345, this oversight does not strip it of the benefits and protection of NRS Chapter 616, and does not subject it to the provisions of NRS 616.375. Furthermore, pursuant to NRS 616.360 and NRS 616.500, someone on Perot's behalf was obligated to give notice of his injury and death to the Nevada Industrial Commission. The appellants by their inaction cannot preclude the employer respondent from the benefits and protection of NRS Chapter 616.

The failure on the part of both parties to file a timely notice does not, for that reason alone, bring the appellants within NRS 616.375, and give them a common law action against the respondent employer.

We find that the employer respondent had provided and secured industrial insurance, and that all parties were within the provisions of NRS Chapter 616 at the time of the assault on Perot. The effect of the failure to file timely notice of such injury is not a question to be here decided, nor is the Nevada Industrial Commission an indispensible party in this case.

Appellant next contends that NRS 616.270[5] is not applicable in this case because the assault did not "arise out of" Perot's employment. In reaching its decision the district court

[4]NRS 616.650. "Any person, firm or corporation, agent or officer of any firm or corporation, or any attending physician or surgeon who fails or refuses to comply with the provisions of NRS 616.345 shall be fined not more than $200."

[5]NRS 616.270. "1. Every employer within the provisions of this chapter, and those employers who shall accept the terms of this chapter and be governed by its provisions, as in this chapter provided, shall provide and secure compensation according to the terms, conditions and provisions of this chapter for any and all personal injuries by accident sustained by an employee arising out of and in the course of the employment.

"2. In such cases the employer shall be relieved from other liability for recovery of damages or other compensation for such personal injury, unless by the terms of this chapter otherwise provided."

correctly found that the assault with resulting injury and death arose out of Perot's employment.

It is not controverted that the assault upon Perot was perpetrated while he was in the course of his employment, but appellants contend that the resultant injury did not arise out of his employment.

The appellants rely on the case of McColl v. Scherer, 73 Nev. 226, 315 P.2d 807 (1957) in support of their position that the injury to Perot did not, as a matter of law, arise out of his employment. The *McColl* case is clearly distinguishable because there the assault was perpetrated by a customer who was a member of the general public and not, as here, by an insane fellow employee.

We find, as a matter of law, that the death arose out of the employment, since Perot was assaulted in the course of his employment by an insane fellow employee. The risk to Perot of injury or death from assault by Maatallah was far greater than that incurred by the public in general. The respondent employer is entitled to the defense of the exclusive coverage of NRS 616.270 and is relieved from other liability for recovery of damages for such personal injury and death.

In Pacific Employers Ins. Co. v. Industrial Acc. Com'n., 293 P.2d 502 (Cal.App. 1956), where an employee, who in the opinion of a physician, was a paranoic schizophrenic, mentally unbalanced and suffering from delusions of persecution, shot and killed a fellow employee, the court held the injury arose out of the employment, and said: "It is undoubtedly the law that when a workman is not exposed to a peculiar risk because of his employment but is only exposed to a risk common to the general public, and is injured by that source, the injury is not compensable. More specifically, it is well settled that injuries resulting from assaults by fellow workmen when the attack results from personal animosity unconnected with the employment, are not compensable. But this rule is inapplicable if the employment increases or contributes to the risk of assault. . . . [T]he weight of authority and certainly the better reasoned cases, hold that when a fellow employee goes insane and kills or attacks a fellow employee the injury or death is compensable."

In the case of Howard v. Harwood's Restaurant Co., 128 A.2d 727 (N.J. 1957), that court said: "In addition to the matters stated there, it may be noted that the ordinary employer has the right of *delectus personae*. He selects and engages the employees; he places them for the performance of

his work in the various departments or locations and he arranges the contact or association the employees have with each other during the course of the work, either expressly or as the result of the natural requirements of the operation. In the usual case, the employee has no choice as to his fellow employees or the nature or proximity of their contact with him. Such matters are regulated by the employer or by the demands of his business. Thus it may be said that a workman's fellow employees with all their idiosyncrasies and weaknesses, physical and mental, are a condition of the employment. . . . Insanity is a condition which must be recognized as an incident of everyday life; it can erupt into irrational and purposeless violence at any time during the working day. An employee who is injured in the course of his work by the insane act of a fellow worker, in our judgment, clearly sustains an injury which arises out of the employment."

In Anderson v. Security Building Co., 123 A. 843, 844, 40 A.L.R. 1119 (Conn. 1924), it is held as follows: "When an employer puts an employee at work on a machine, although the employer may have exercised all reasonable care to provide that it is safe, . . . which, without fault on his part, has a latent defect, which causes it to break down and injure the employee, the injury is unquestionably one arising out of a condition of his employment. It is immaterial, under the act, whether the employer knew or ought to have known of the existence of the dangerous condition. So where a fellow servant by his negligence injures another employee, compensation is due for the injury, since it arose from a condition of the employment, to wit, the possibility of such negligence of a fellow servant. The knowledge of the employer as to the liability of the fellow servant to be negligent is immaterial. Such liability is a condition attending the employment. The situation here presented of an insane man running amuck, is in no way analogous to a case where a fellow employee assaults another employee solely to gratify his feeling of anger or hatred; in such case 'the injury results from the voluntary act of the assailant, and cannot be said to arise either directly out of the employment, or as an incident of it.' . . . Whenever an employer puts his employees at work with fellow servants the conditions actually existing, apart from the possibility of willful assaults by a fellow servant independent of the employment, which result in injury to a fellow employee, are a basis for compensation under the implied contract of that act. So in this case, although the employer may not have had knowledge actual or constructive that Markus, a fellow servant of the

plaintiff, was insane and liable to run amuck, yet such liability of Markus to run amuck was in fact a condition under which the plaintiff was employed on the night in question, and, if such condition of Markus caused an injury to the plaintiff, as it did, then the injury to the plaintiff arose out of his employment as truly as if it had arisen from the negligence of Markus in doing his work."

Other cases that have allowed recovery under industrial insurance act where the accidents have resulted from the conduct of insane fellow employees are: John H. Kaiser Lumber Co. v. Industrial Commission, 195 N.W. 329 (Wis. 1923); Petroleum Casualty Co. v. Kincaid, 93 S.W.2d 499 (Texas App. 1936); Charbazian v. Regina Novelty Corp., 14 N.Y.S.2d 654 (1939); Chadwick v. White Provision Co., 60 S.E.2d 551 (Ga.App. 1950); Zimmerman v. Elizabeth City Freezer Locker, 94 S.E.2d 813 (N.C. 1956). See also Whaley v. Patent Button Co., 202 S.W.2d 649 (Tenn. 1947).

When the district court entered its order for summary judgment there remained no real or material issue of fact to be tried by a court or jury and as a matter of law the respondent employer was entitled to judgment.

The district court's order for summary judgment is sustained and the judgment below is in all respects affirmed.

COLLINS, C. J., ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.