Cleland Simpson Co. and Pennsylvania Manu-
facturers' Association Insurance Company, In-
surance Carrier, Appellants, *v.* Workmen's Com-
pensation Appeal Board and Rose Marie Mc-
Laughlin, Mother of Mabel Louise McLaughlin,
Deceased, Appellees.

Rose Marie McLaughlin, Mother of Mabel Louise
McLaughlin, Deceased, Appellant, *v.* Workmen's
Compensation Appeal Board, Cleland Simpson
Company and Pennsylvania Manufacturers' As-
sociation Insurance Company, Insurance Carrier,
Appellees.

Argued December 5, 1974, before Judges KRAMER, WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Robert H. Sayers,* with him *Van Deusen & Van Deusen,* for Cleland Simpson Company and Pennsylvania Manufacturers' Association Insurance Company.

*Richard Lovelle,* with him *Peter T. O'Malley* and *O'Malley and McHale,* for Rose Marie McLaughlin.

OPINION BY JUDGE KRAMER, February 25, 1975:

This opinion involves two separate appeals filed from an adjudication of the Workmen's Compensation Appeal Board (Board) dated February 21, 1974, in which the Board affirmed the decision of a referee (dated June 15, 1973) awarding workmen's compensation benefits to Rose Marie McLaughlin (Claimant). Claimant is the mother of Mabel Louise McLaughlin, deceased, an employe of Cleland Simpson Company (Cleland), which operated a retail department store known as The Globe Store, located in Scranton, Pennsylvania. The Board in its adjudication amended the amount of the award as will be hereinafter described.

The events leading to the claim are both tragic and bizarre. For approximately five weeks Mabel Louise

McLaughlin, known as Debbie, worked as a sales clerk at The Globe Store. She had moved from her family home in the State of Indiana to Scranton to live with her godparents. In her home state, she had attended a state teachers' college for one semester. She had worked for a telephone company in Indiana for about 15 weeks. At the time of her death she was 19 years of age and without a blemish to her reputation or work record. During the same period in which she worked at The Globe, David Evans, a 22 year old psychotic, also worked at The Globe, as a stock clerk. Apparently under the delusions which he suffered, David Evans believed he had made dates with Debbie, which she had failed to keep. As a result of his psychotic decompensated state (paranoid schizophrenia), on October 18, 1968, while Debbie was working behind a sales counter at The Globe Store, David Evans, without provocation, attacked Debbie and stabbed her 13 times about the upper portions of her body, in full view of customers and other employes. Debbie was rushed to a hospital where she was pronounced dead about one hour later. Evans fled the scene of the attack, was eventually captured, charged with murder, and, after a psychiatric examination, committed to a hospital for the criminally insane.

The Claimant filed a fatal claim petition. Cleland denied the claim on the basis that Debbie had been murdered by a fellow employe because of personal reasons and not because of her status as an employe or because of the fact of her employment, and, therefore, the death was not compensable under the Pennsylvania Workmen's Compensation Act (Act), Act of June 21, 1939, P. L. 520, *as amended,* 77 P.S. §1 et seq. After extensive hearings, the referee issued his adjudication, which contains one of the most comprehensive sets of findings of fact we have ever reviewed in a workmen's compensation case. The referee awarded compensation to the Claimant in the amount of $16 per week from October

19, 1968 through the lifetime of the Claimant, together with the usual provisions for hospital and funeral bills. Cleland appealed to the Board on the same issue it raised before the referee. The Claimant appealed to the Board alleging that the referee had erred in computing the amount of the award. The Board affirmed all of the findings of the referee, but amended the amount of the award to $18.41 per week on the basis of its computation of the pay records of Debbie with Cleland, and the Board's interpretation of the Act.

At case No. 316 C.D. 1974, Cleland appealed to this Court, once again contending that Debbie's death was not compensable because her murder was the result of things personal to David Evans, and therefore not within the scope of her employment. At case No. 321 C.D. 1974, Claimant appealed, contending that the amount of the award, as increased, was not correct in that the Board had failed to recognize Debbie's earnings from the Indiana telephone company. In both of these cases we must affirm the Board.

## No. 316 C.D. 1974

Cleland contends that by virtue of Section 301 of the Act, 77 P.S. §411, Debbie's death was not compensable. That section, in pertinent part, reads as follows: "The term 'injury by an accident in the course of his employment,' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment. . . ."[1] Cleland argues that the record

---

[1] Our initial reading of this statute yielded the impression that the pronoun "him" referred to the employe and not an assailant. Our reading of the many cases dealing with this provision, however, shows that our appellate courts have considered the personal motivation of the assailant to be relevant, and, at this point, we are obligated to follow this approach.

in this case establishes that David Evans attacked and killed Debbie for reasons personal to him, and, therefore, the above-quoted language proscribes any benefits.[2] Cleland relies upon the holding of our Supreme Court in *Dolan v. Linton's Lunch,* 397 Pa. 114, 152 A. 2d 887 (1959), which involved a trespass action by an employe against his employer for injuries resulting from a beating by a fellow employe. In that case, our Supreme Court held that if the attack is directed against the employe for personal reasons not connected with his employment, the injury is not compensable under the Act, even though the assaulted employe is at the time pursuing the business of the employer. Thus, when an employe accepts the coverage of the Act, he or she does so for all accidental injuries which occur in the course of employment except those arising from attack by a third person or fellow employe for personal reasons. In *Dolan, supra,* our Supreme Court made it quite clear that the burden of proving the intention to injure for reasons personal to the assailant rests with the employer. 397 Pa. at 125, 152 A. 2d at 893. *See also Scott v. Acme Wire Products, Inc.,* 13 Pa. Commonwealth Ct. 546, 319 A. 2d 436 (1974) and *United States Steel Corporation v. Workmen's Compensation Appeal Board,* 10 Pa. Commonwealth Ct. 247, 309 A. 2d 842 (1973). At first glance, it may appear that the holding in the *Dolan* opinion makes the determination in this case a very close one. However, none of the cases cited by either of the parties in this appeal relates to an unprovoked injury or death inflicted by an insane, irrational fellow employe.

---

[2] It should be pointed out that the week following the death of Claimant's daughter, the Claimant received a letter of condolence from one of Cleland's officers which read, in part: "Let me assure you that Debbie had nothing to do with what happened, she was the innocent victim of what apparently is a sick, sick mind."

As we read the exclusionary provision of Section 301, quoted above, and the cases interpreting it, we conclude that there must be some intention on the part of the assailant to inflict the injury or the death for personal reasons. In *O'Rourke v. O'Rourke*, 278 Pa. 52, 122 A. 172 (1923), where the Court was faced with the same exclusionary language of the Act prior to its many amendments, our Supreme Court held that where the assailant was intoxicated at the time of the altercation and the assailant had no personal animosity toward the employe at the time of the attack (other than to satisfy his appetite for liquor at the expense of the claimant), benefits under the Act were not precluded. In *O'Rourke* the Court said: "No personal animosity existed, however, and the attack, so far as the evidence shows, was without provocation or premeditation and merely the result of an evil mind excited by an excessive use of liquor. In our opinion, an attack from such source was an unexpected happening in the course of decedent's employment and properly the subject of compensation." 278 Pa. at 56, 122 A. at 173.

Recently this Court had occasion to pass upon this same section of the Act in *United States Steel Corporation, supra,* where an employe was struck in the face by a fellow employe without any provocation. We noted there that the Act is remedial in nature and is to be liberally construed in favor of the employe, and that the burden is on the employer to prove that the assailant intended to injure the claimant/employe owing to reasons personal to the assailant.

The record in this case establishes beyond cavil that there was no acrimonious relationship between Debbie and Evans prior to the assault. All of Evans' reasons for his conduct were the result of his schizophrenic paranoid mental illness. The report of one of the psychiatrists, which is a part of the record, establishes that Evans could not have had any *personal* reason directed

*toward Debbie* at the time of the attack. In Evans' words, recorded by a psychiatrist who examined him: "I guess it could have been anybody." We conclude that there is ample substantial evidence in this record to support the referee's findings and conclusions that Debbie's death was compensable because the attack by Evans was "completely psychotic, uncontrolled, homicidal furor and rage" and was not inflicted for personal reasons within the meaning of the exclusionary provisions of Section 301 of the Act. We can see little difference between the result here, where the assailant is an insane fellow employe unable to distinguish between right and wrong, and the result in *O'Rourke, supra,* where the assailant was intoxicated, with a similar mental condition at the time of the attack.

## No. 321 C.D. 1974

In this case the Claimant contends that both the referee and the Board erred in determining the amount of the award. During the five weeks she worked at The Globe Store, Debbie's weekly pay checks were $31.20, $60, $60, $59.20 and $57.60. Prior to her residence in Pennsylvania, Debbie worked for a telephone company in the State of Indiana for approximately 15 weeks, during 1968, for a wage of approximately $100 per week. Based upon these facts, the Claimant contends that she is entitled to $25 per week for the rest of her life, rather than the $18.41 per week awarded by the Board. Section 307 of the Act, 77 P.S. §561, provided at the time of the injury, in pertinent part:

"In case of death, compensation shall be computed on the following basis, and distributed to the following persons:

. . . .

"5. If there be neither widow, widower, nor children entitled to compensation, then to the father or the mother, if dependent to any extent upon the employe at

the time of the accident, thirty-two per centum of wages but not in excess of twenty-five dollars per week. . . ." The record supports with substantial evidence the referee's finding that the Claimant was dependent upon her daughter, Debbie. Section 309(d) of the Act, 77 P.S. §582(d), provides: "If the employe has been in the employ of employer less than thirteen calendar weeks . . . his average weekly wage shall be computed under the foregoing paragraph, taking 'total wages' for such purpose to be the amount he would have earned had he been so employed by employer the full thirteen calendar weeks (or three calendar months) immediately preceding the accident and had worked, when work was available to other employes in a similar occupation, unless it be conclusively found that by reason of exceptional causes such methods of computation does [sic] not ascertain fairly the 'total wages' of employes so employed less than thirteen calendar weeks (or three calendar months). . . ." In utilizing the words of this section, the Board amended the referee's award by assuming that Debbie would have earned $60 per week for ten of the 13 weeks, and then by utilizing the lesser amounts for the three weeks noted above, arrived at an average weekly wage of $57.54. Then applying the 32 percent mentioned in Section 307, noted above, the Board found the Claimant to be entitled to $18.41 per week. We conclude that the Board was correct in its computation.

The Claimant points to the last paragraph of Section 309 of the Act, 77 P.S. §582(e), and argues that the Board should have included Debbie's earnings with the Indiana telephone company. That section, in effect at the date of Debbie's death, reads as follows: "If under clauses (a), (b), (c), (d) and (e) of this section the amount determined is less than if computed as follows, this computation shall apply: viz.,—divide the total wages earned by the employe during the last two completed calendar quarters with the same employer by the

number of days he worked for such employer during such period multiplied by five." Without getting into all of the issues raised by Claimant regarding whether the two completed calendar quarters must be consecutive or full quarters, or who is the "same employer," we point out that the defect in Claimant's argument is that the record does not support in any way a conclusion that Debbie ever worked "two completed calendar quarters" for the telephone company. Claimant relies upon wholly inadequate testimony offered at the hearing before the referee, and an exhibit indicating Debbie's total income tax withholding statement for the year 1968, but none of this evidence establishes the two quarters of employment required by the last paragraph of Section 309 of the Act, and, therefore, we must affirm the computation of the award made in the Board's adjudication. We therefore

### ORDER

AND NOW, this 25th day of February, 1975, it is hereby ordered that Cleland Simpson Company and/or its insurance carrier, Pennsylvania Manufacturers' Insurance Company, pay to Rose Marie McLaughlin compensation for partial dependency at the rate of $18.41 per week from October 19, 1968 and continuing indefinitely thereafter during the lifetime of Rose Marie McLaughlin, subject to the provisions of The Pennsylvania Workmen's Compensation Act, Act of June 21, 1939, P. L. 520, *as amended*, 77 P.S. §1 et seq.; and, it is further ordered that Cleland Simpson Company and/or its insurance carrier, Pennsylvania Manufacturers' Insurance Company, reimburse Rose Marie McLaughlin in the amount of $750 for the funeral expenses of Mabel Louise McLaughlin; and, it is further ordered that Cleland Simpson Company and/or its insurance carrier, Pennsylvania Manufacturers' Insurance Company, pay to the Moses Taylor Hospital, Quincy Avenue, Scranton, Penn-

sylvania, $178 due it for hospital treatment of Mabel Louise McLaughlin. All deferred payments of compensation shall bear interest at the rate of six per centum (6%) from the due date thereof.