**CEDAR RAPIDS COMMUNITY SCHOOL and Bituminous Casualty Corporation, Appellants,**

v.

**Reginald DeWayne CADY, Deceased, Roberta Kay Cady, widow, and Iowa Industrial Commissioner, Appellees.**

No. 61759.

Supreme Court of Iowa.

April 25, 1979.

Rehearing Denied May 24, 1979.

John A. McClintock and William D. Scherle of Hansen, Wheatcraft & McClintock, Des Moines, for appellants.

William D. Martin of Fisher, Yarowsky, Martin, Ehrhart & Redmond, Cedar Rapids, for appellees.

McCORMICK, Justice.

Roberta Kay Cady claims workers' compensation death benefits based upon the killing of her husband Reginald DeWayne Cady by Graydon Caslavka on November 1, 1974. The main question in this appeal is one of first impression in Iowa. It is whether an injury sustained by an employee from an on-the-job assault by a deranged co-employee arises out of employment within the meaning of the workers' compensation law. The industrial commissioner and district court held the death to be compensable. Upon the employer and insurer's appeal, we affirm.

We are bound by the commissioner's findings of fact because they are supported by substantial evidence.

Decedent and Caslavka were employed as janitors by the Cedar Rapids Community School District. Cady had worked for the district three months and had been assigned to Harding School for two weeks. Caslavka had worked there for one month.

The two men had no contact outside of work and little contact at work. However, unknown to the employer and Cady, Caslavka was afflicted with paranoid schizophrenia accompanied by delusions of persecution. He believed a "hit man" was after him to avenge his misconduct in real and imagined past sexual affairs. On the day before the killing, Caslavka decided Cady was the hit man. This was based upon misinterpreting something Cady said and because he thought Cady "looked bug-eyed" at him. On the day of the killing Cady almost collided with Caslavka's car while driving into the school parking lot on his

arrival at work. After parking his car, Cady said, "I almost got you that time" and, according to Caslavka, "looked bug-eyed" at him again.

Caslavka then took a pistol from his car and shot Cady, fatally wounding him. Subsequent psychiatric examinations established that Caslavka's conduct was wholly caused by an insane delusion.

Before holding that Cady's death arose out of his employment the industrial commissioner exhaustively reviewed the evidence and applicable law. After discussing the evidence, he concluded, "Medical testimony shows that Cady's employment environment placed him in contact with a co-employee who suffered from paranoid schizophrenia accompanied by delusions of persecution."

The commissioner noted that the majority of jurisdictions allow recovery in such cases. They do so on the basis of the analogy between a latent defect in a machine which breaks down and causes injury and an unforeseen mental disorder which causes a co-employee to run amuck and cause injury. In both situations the occurrence is viewed as a natural incident of the work because it is a rational consequence of a hazard to which the employment exposed the injured employee.

The district court adopted this reasoning in affirming the commissioner's decision.

In seeking reversal, the employer and insurer urge two contentions. One is that the commissioner and district court erred in holding Cady's death arose "out of" his employment. The other is that they erred in failing to deny the claim on the ground the death was caused by the willful act of a third party.

In keeping with the humanitarian objective of the workers' compensation statute, we apply it broadly and liberally. The legislation is primarily for the benefit of the worker and the worker's dependents. Its beneficent purpose is not to be defeated by reading something into it which is not there, or by a narrow and strained construction. *Disbrow v. Deering Implement Co.*, 233 Iowa 380, 392, 9 N.W.2d 378, 384 (1943). Nonetheless, we are bound by the requirements of the statute. *Halstead v. Johnson's Texaco*, 264 N.W.2d 757, 759 (Iowa 1978).

The statute requires payment of compensation "for any and all personal injuries sustained by an employee arising out of and in the course of the employment." § 85.-3(1), The Code 1979.

The employer and insurer admit that Cady was killed "in the course of" his employment. This element refers to the time, place and circumstances of the injury. An injury occurs in the course of employment when it is within the period of employment at a place the employee may reasonably be, and while he is doing his work or something incidental to it. *McClure v. Union, et al. Counties*, 188 N.W.2d 283, 287 (Iowa 1971).

Defendants deny that Cady's injury arose "out of" his employment. This element refers to the cause and origin of an injury. *Id.* The injury must be a natural incident of the work. This means it must be a rational consequence of a hazard connected with the employment. *Musselman v. Central Telephone Co.*, 261 Iowa 352, 355, 154 N.W.2d 128, 130 (1967); *Burt v. John Deere Tractor Works*, 247 Iowa 691, 700, 73 N.W.2d 732, 737 (1956). The dispute here concerns whether the risk of attack by Caslavka was a hazard connected with Cady's employment.

Defendants also rely on the affirmative defense provided in section 85.16(3). It precludes recovery for an injury caused "[b]y the willful act of a third party directed against the employee for reasons personal to such employee."

I. *Did the death arise out of Cady's employment?* Most jurisdictions which have considered the question have held that an injury from an on-the-job assault by a deranged co-employee arises out of employment. *See* 1 A. Larson, *Law of Workmen's Compensation* § 11.32(a), at 3–224 (1978) ("If claimant is assaulted by a co-employee who becomes irresponsible because of insanity, the great majority of decisions hold that the injury arose out of the employment, and it is immaterial whether or not

the employer had knowledge of the assailant's condition or propensities."); 82 *Am. Jur.2d Workmen's Compensation* § 330, at 128 (1976) ("When an employee goes insane and kills or attacks a fellow employee the injury or death is compensable."); *99 C.J.S. Workmen's Compensation* § 227, at 771 (1958) ("Where the employee is at his place of work when assaulted by an insane person, his injuries are compensable as arising out of, and in the course of, his employment . . . .").

The leading case is *Anderson v. Security Building Co.*, 100 Conn. 373, 123 A. 843 (1924). Like the present case, it involved the shooting of one janitor by another upon an insane impulse. Connecticut, like Iowa, defined "arising out of" to mean that the injury must be a natural incident of the employment. In applying the statute, the court reasoned as follows:

> When an employer puts an employee at work on a machine, although the employer may have exercised all reasonable care to provide that it is safe, but which, without fault on his part, has a latent defect, which causes it to break down and injure the employee, the injury is unquestionably one arising out of a condition of his employment. It is immaterial, under the act, whether the employer knew or ought to have known of the existence of the dangerous condition. So, where a fellow servant by his negligence injures another employee, compensation is due for the injury, since it arose from a condition of the employment, to wit, the possibility of such negligence of a fellow servant.

> The knowledge of the employer as to the liability of the fellow servant to be negligent is immaterial. Such liability is a condition attending the employment.

> .    .    .    .    .

> Whenever an employer puts his employees at work with fellow servants the conditions actually existing, apart from the possibility of willful assaults by a fellow servant independent of the employment, which result in injury to a fellow employee, are a basis for compensation under the implied contract of that

act. So in this case, although the employer may not have had knowledge actual or constructive that Markus, a fellow servant of the plaintiff, was insane and liable to run amuck, yet such liability of Markus to run amuck was in fact a condition under which the plaintiff was employed on the night in question, and, if such condition of Markus caused an injury to the plaintiff, as it did, then the injury to the plaintiff arose out of his employment as truly as if it had arisen from the negligence of Markus in doing his work.

> .    .    .    .    .

> It is the actual conditions under which the employment is carried on that is important; not the conditions under which parties know or suppose that it is carried on. The possibility that a fellow servant may be or become insane and run amuck is a condition under which one employed with fellow servants is required to perform his work.

100 Conn. at 376–377, 123 A. at 844–845.

Most other jurisdictions which have confronted the question have reached the same result using similar reasoning. *See Hartford Accident & Indemnity Co. v. Hoage*, 66 App.D.C. 160, 85 F.2d 417 (1936); *Hartford Accident and Indemnity Co. v. Cardillo*, 72 App.D.C. 52, 112 F.2d 11, *cert. denied*, 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415 (1940); *Toler v. Industrial Commission*, 22 Ariz. App. 365, 527 P.2d 767 (1974) (applying the principle to an attack by an intoxicated co-employee); *Pacific Employers Insurance Co. v. Industrial Accident Commission*, 139 Cal.App.2d 260, 293 P.2d 502 (1956); *London Guarantee & Accident Co. v. McCoy*, 97 Colo. 13, 45 P.2d 900 (1935); *Chadwick v. White Provision Co.*, 82 Ga.App. 249, 60 S.E.2d 551 (1950); *Mayo v. Safeway Stores Inc.*, 93 Idaho 161, 457 P.2d 400 (1969); *Louie v. Bamboo Gardens*, 67 Idaho 469, 185 P.2d 712 (1947); *Cummings v. United Resort Hotels, Inc.*, 85 Nev. 23, 449 P.2d 245 (1969); *Howard v. Harwood's Restaurant Co.*, 43 N.J.Super 301, 128 A.2d 727, *aff'd*, 25 N.J. 72, 135 A.2d 161 (1957); *Crotty v. Driver-Harris Co.*, 45 N.J.Super. 75, 131 A.2d 578 (1957); *Perez v. Fred Harvey, Inc.*,

54 N.M. 339, 224 P.2d 524 (1950) (applying the principle to an attack by an intoxicated co-employee); *Charbazian v. Regina Novelty Corp.*, 257 App.Div. 1097, 14 N.Y.S.2d 654 (1937); *Zimmerman v. Elizabeth City Freezer Locker*, 244 N.C. 628, 94 S.E.2d 813 (1956); *Cleland Simpson Co. v. Workmen's Compensation Appeal Board*, 16 Pa.Cmwlth. 566, 332 A.2d 862 (1974); *Whaley v. Patent Button Co.*, 184 Tenn. 700, 202 S.W.2d 649 (1947); *Travelers Insurance Co. v. Hampton*, 414 S.W.2d 712 (Tex.Civ.App.1967); *Petroleum Casualty Co. v. Kincaid*, 93 S.W.2d 499 (Tex.Civ.App.1936); *John H. Kaiser Lumber Co. v. Industrial Commission*, 181 Wis. 513, 195 N.W. 329 (1923). *See also Crilly v. Ballou*, 353 Mich. 303, 91 N.W.2d 493 (1958); *Allen v. Dorothy's Laundry and Dry Cleaning Co.*, 523 S.W.2d 874 (Mo.App.1975) (based in part upon statutory definition of accident).

A minority view is reflected in cases from Illinois and Utah. *See Belden Hotel Co. v. Industrial Commission*, 44 Ill.2d 253, 255 N.E.2d 439 (1970); *Spring Canyon Coal Co. v. Industrial Commission*, 58 Utah 608, 201 P. 173 (1921). Recovery has also been denied when the assault results from an off-the-job quarrel which merely erupts at the place of employment. *See Velasquez v. Industrial Commission*, 581 P.2d 748 (Colo. App.1978); *Golden v. Inland Steel Co.*, 359 N.E.2d 252 (Ind.App.1976).

A case which is typical of those allowing recovery is *London Guarantee & Accident Co. v. McCoy*, 97 Colo. 13, 45 P.2d 900 (1935). Employee McCoy met his death when he entered the home of one Decino to use the telephone in an effort to locate Decino's son-in-law in connection with McCoy's employer's business. While McCoy was in the home, Decino was suddenly overcome by an insane delusion. He seized a butcher knife, fatally wounded McCoy with it and then chased his wife and daughters in an effort to slay them.

In affirming an award of compensation, the court noted an accident may arise out of employment without having been possible to anticipate. It is sufficient if, after the injury, it can be seen that it occurred because of the employment.

In response to a contention that the death did not arise out of McCoy's employment because it could have happened to him "at any other time or place," the court said: "The record does not permit the assumption that the accident could have happened 'at any other time or place.' It was confined to the identical place and almost the identical moment of the presence of McCoy in the discharge of the duties of his employment." 97 Colo. at 17, 45 P.2d at 902. The facts in the present case strongly support a similar conclusion.

The case of *Zimmerman v. Elizabeth City Freezer Locker*, 244 N.C. 628, 94 S.E.2d 813 (1956), is also instructive. It answers defendants' contention that Cady was exposed to no greater risk of injury by Caslavka than the public at large. In *Zimmerman* the employer contended recovery should be denied because an incident away from work triggered the assailant's decision to kill someone. The assailant later said the decision was based on the belief "everybody dominates me." However, he went purposely to his place of employment to kill someone he knew rather than someone he passed on the street on the way. Hence the victims were exposed by their employment to a greater hazard of injury at his hands than the public at large. The court held that the two resulting deaths and an injury thus arose out of the victims' employment. Similarly, it was Cady's employment association with Caslavka which made him the object of Caslavka's delusion in the present case.

Another helpful case is *Gargiulo v. Gargiulo*, 13 N.J. 8, 97 A.2d 593 (1953). In that case a boy shot an arrow toward an employer's property, striking an employee in the eye. The court held the injury arose out of employment because the work brought the employee unwittingly into the line of fire, where he would not have been except for his employment.

The principle of *Gargiulo* was followed in *Howard v. Harwood's Restaurant Co.*, 43 N.J.Super. 301, 128 A.2d 727, aff'd, 25 N.J. 72, 135 A.2d 161 (1957), where the court

held that an attack on the person of an employee by a co-employee motivated by a delusional impulse is compensable. The court said: "We cannot with any rational degree of consistency say that an arrow shot by a boy onto the employer's premises is causally related to the employment, while an assault and battery committed upon an employee by an insane co-employee is not." 25 N.J. at 86, 135 A.2d at 168. Just as surely as did the injured man's employment in *Gargiulo*, Cady's employment placed him "in the path of an arrow" in the present case.

Although this is a case of first impression in Iowa on its facts, the principles of law applied by the commissioner are solidly established in our cases.

In *Everts v. Jorgensen*, 227 Iowa 818, 289 N.W. 11 (1939), this court affirmed an award of compensation to a hotel clerk who, while on duty, was attacked by a recently discharged employee of the hotel. The court found the evidence did not require the commissioner to hold that the employer met its burden to establish its defense that the attack was directed against the clerk for reasons personal to him. *See* § 85.16(3).

In refusing to interfere with the commissioner's holding, the *Everts* court observed that the record supported the inferences drawn by the commissioner:

> They had never had any quarrels, crosswords, or disagreements and . . . there is nothing in the record which points to any conduct on the part of Everts to change this relationship and the commissioner reasons that the attack made upon claimant would have been made upon any other person who happened to be located where claimant was at the time the attack was made, the attack being "willful without reason, perhaps superinduced by stimulants when his impulse to aggression was beyond control", or, being possessed at the time of an evil mind, made no attempt to control his impulse . . . . .

227 Iowa at 827–828, 289 N.W. at 15–16.

The *Everts* court thus approved reasoning of the commissioner exactly like that

under which the commissioner and district court allowed recovery in this case.

Another of our cases which supports the commissioner's decision is *Walker v. Speeder Machinery Corp.*, 213 Iowa 1134, 240 N.W. 725 (1932). The claim there was made in behalf of an employee whose duties required him to travel for the purpose of demonstrating or repairing machines. He went to Pittsburgh for a Monday appointment. On Sunday evening, while crossing a street on his way to supper, he was struck and fatally injured by an automobile. One question was whether his death arose out of his employment. The accident was a "street risk" to which the public at large is exposed. The court held that the accident was a natural incident of his employment because, "It was necessary that Walker should travel, that he should rest at hotels, and that he should eat meals." 213 Iowa at 1149, 240 N.W. at 732.

The risk of danger from on-the-job assault by a deranged person has been compared to the danger from such street risks. Courts, like this court in *Walker*, have rejected the notion that the hazards of street accidents are common to the community at large and thus not incident to particular employment. *See Hartford v. Accident & Indemnity Co.*, 66 App.D.C. 160, 162, 85 F.2d 417, 419 (1936) ("We are of the opinion that the principles relating to compensation . . . from street accidents apply in the present instance."). When work exposes the employee to the risks of the street, the injury is compensable; when work exposes an employee to the risk of attack by a deranged person, it is like a "street risk" and also compensable.

■ The commissioner's interpretation of section 85.3(1) is thus consistent with principles in our own cases. We have no basis for holding he applied an incorrect standard in determining that Cady's death arose out of his employment.

An employee who associates with other employees is exposed to the risk of injury arising from their acts or omissions. No difference in principle exists when the inju-

ry is caused by conduct resulting from an insane delusion rather than negligence or chance mishap. The resulting injury is equally a rational consequence of a hazard connected with the employment.

We therefore align ourselves with the majority of jurisdictions. Like the commissioner and district court, we hold that Cady's death arose out of his employment.

II. *Did defendants establish their willful injury defense?* Under section 85.16(3), compensation is denied if the employer proves that the injury was caused "[b]y the willful act of a third party directed against the employee for reasons personal to such employee." The commissioner found against defendants on this issue. Unless he erred by applying an incorrect principle of law or defendants satisfied their burden of proof on the defense as a matter of law, we have no ground to interfere. Neither situation exists here.

█ Defendants acknowledge, as the commissioner found, Cady was merely the passive object of Caslavka's assault which was precipitated by an insane delusion. As in *Everts v. Jorgenson*, the commissioner found the defense under section 85.16(3) was not established because the attack was not motivated by reasons personal to Cady. The commissioner applied the correct principle of law and was not obliged to find the facts differently.

We find no merit in either contention relied upon by defendants for reversal.

AFFIRMED.

All Justices concur except ALLBEE, Le-GRAND and McGIVERIN, JJ., who dissent.

ALLBEE, Justice (dissenting).

I cannot agree that the death of Reginald DeWayne Cady arose out of his employment. The facts are not disputed. Cady's death came at the hands of a deranged fellow employee. This bizarre occurrence was unrelated to any ordinary employment-connected hazard. As a matter of law, this occurrence cannot be said to meet the test: whether the "injury follow[ed] as a natural incident of the work." *Musselman v. Central Telephone Co.*, 261 Iowa 352, 355, 154 N.W.2d 128, 130 (1967).

Nor am I able to accept the court's borrowed analogy which equates the mental derangement of a human being with a machine malfunction. As recently noted in another context, "[p]eople do not function like machines." *Maquoketa Valley Community School District v. Maquoketa Valley Education Association*, 279 N.W.2d 510, 516 (Iowa 1979) (McCormick, J., dissenting). Neither do people malfunction like machines.

While purporting to apply the workers' compensation law broadly and liberally, I am convinced that the court has gone far beyond any result contemplated by the drafters of the statute. I therefore dissent from division I of the court's opinion and the result.

LeGrand and McGiverin, JJ., join in this dissent.